## WARNER v. UNITED STATES.

### No. 508.

Circuit Court of Appeals, Tenth Circuit.

June 25, 1932.

POLLOCK, District Judge, dissenting.

For former opinion, see 54 F.(2d) 859.

J. W. Ward, of Wichita, Kan., for appellant.

S. M. Brewster, U. S. Atty., and Dan B. Cowie, Asst. U. S. Atty., both of Topeka, Kan.

Before COTTERAL and PHILLIPS, Circuit Judges, and POLLOCK, District Judge.

COTTERAL, Circuit Judge.

We adhere to our former decision in holding that the sufficiency of the evidence against Warner was reviewable, although the question was not saved by a motion for a directed verdict. Substantial evidence was requisite that was more consistent with his guilt than with his innocence. Moore v. United States (C. C. A.) 56 F.(2d) 794. In view of John Loehr's plea of guilty, the inquiry is whether Warner was a party to the offenses. A further consideration of the record has convinced a majority of this court that we erred in estimating the evidence, and that it was ample to warrant the convictions.

We advert more fully to the evidence for the government. Six enforcement officers searched the farm premises of John Lochr, on the afternoon of June 12, 1930. At the barn or shed, they found a large still, vats of mash, sugar, rye, whisky, two agers in operation, and electrical apparatus, including a bell and a buzzer connection with the dwelling house. The agers were 50-gallon charred barrels, to which were attached hot water coils, with burners underneath them. An attendant was required to keep them going. As two of the officers drove up, a rat-

tle was heard, a shed door slammed, and Warner ran or started to run from the shed. He was ordered to stop and obeyed. He then accompanied them to the still house, where his coat and hat were hanging, and he donned them. He admitted he knew the still was there, but said he did not know who owned or operated it. On the floor there was a bed. He said he had gone there for sleep, was lying there, heard some one come up, arose, and thought "he better run out." The still shed was built around a granary and there the mash vats and overflow were found. He also stated he had been plowing corn for Loehr at $3 a day, but did not know how many horses Loehr had or which of them he drove to plow corn. In the fields, which were muddy from rain, there had been no plowing, and none for the previous three or four days.

Warner's account differed materially. Loehr employed him to work at the farm. He had been there four or five days. He did not run but he walked from the still house. It had a west entrance. He had been in that part of the barn where there were a vise and tools, but no still or still equipment. It was separated by a wall, with a connecting door, and it was necessary to pass through it to enter the room where the still and mash were located. The officers brought his coat to him. He denied telling the officers he had slept in the still room. He did not know who owned the still. He knew it was there, but not the mash and paraphernalia, as he had not been in to look at them. He had never helped to run the still. He left the shed because he heard a car in the yard and thought he would go to see who it was. He had been in the shed about five minutes. He had laid his hat and coat on a bench and started to work on some cultivator shovels. Loehr had left the place before Warner got up that morning. No one had been around there that day. He slept at home and went to work about 7:30 a. m. He worked only four hours with Loehr, but did not remember the names of the horses. He had no conversation with Loehr that day and had no instruction from him. He never saw any one operating the still.

The evidence of the government, if credited, was certainly sufficient to establish Warner's guilt. We may not single out independent facts and declare them wanting; nor accept the defendant's testimony. For example, his mere presence at the scene of the offenses was not of itself unlawful or criminal. But his claim of employment on the farm is disputed by the absence of signs of his work, by the testimony that he did not know how many horses Loehr had or used in plowing corn, and by his own admission he could not recall the names of the horses. A finding, therefore, was justified he was not employed for work on the farm.

We may assume John Loehr was the principal offender. Yet he was absent, there was testimony the still was in operation, an attendant was necessary to keep it going, and no one but Warner was there for that service. The jury might well conclude he was employed for and engaged in operating the still. He was at the still house, with his hat and coat off, and naturally prepared for work. He had no apparent occasion to go there for sleep. His assertion that he was working on the cultivator shovels might have been true. But it lacked confirmation, and it was contradictory of his declaration to the officers that he had gone to the still house for sleep. It was a question for the jury to decide as to what he was doing in fact. His asserted failure even to look at the still and equipment might also have been true, but it was unnatural and unreasonable to omit inspecting them. Finally, the jury was justified in finding he attempted to run away from the still house, and the fact was competent evidence tending to show his guilt.

The evidence reached far beyond suspicion or conjecture. It pointed substantially to Warner's guilt. It cannot be harmonized on the theory of exculpation, without invading the province of the jury. The convictions were sustained by due proof. They are therefore affirmed.

POLLOCK, District Judge (dissenting).

In this case John Loehr, Tony Loehr, and Albert Warner were jointly indicted on four counts: (1) For conducting a still manufacturing whisky; (2) possession of equipment designed and intended for the manufacture of intoxicating liquor; (3) possession of intoxicating liquor; (4) maintaining a nuisance.

To all four counts of this indictment John Loehr pleaded guilty and was sentenced. Tony Loehr and Albert Warner went on trial and were convicted, as follows: Tony Loehr on counts 2 and 4, Albert Warner on all counts, and these defendants appealed. This court on the appeal reversed the conviction as to both defendants for want of sufficient evidence to sustain the convictions. After this opinion was handed down, the government filed a petition for a rehearing in which counsel for the government frankly admitted while

they had theretofore urged the upholding of the convictions as to both defendants there was in truth no sufficient evidence to uphold the conviction of Tony Loehr and that the reversal of the judgment as to him was proper and correct, but still insisted the record contained evidence sufficient to uphold the conviction as to defendant Warner. When the case as to him came on for rehearing, no new briefs were filed and argument thereon was waived and the case as to Warner was resubmitted for decision, and a majority of this court as constituted have prepared an opinion sustaining the conviction as to Warner. As to this opinion I must say I do not like it and do not agree with it. To my mind the liberty of the citizen is too dear and his good name too sacred to be taken away by any such flimsy evidence as is found contained in the record before us. While I do not doubt that some, perhaps many of our people, who fill our penitentiaries and jails to overflowing have been convicted on evidence no more persuasive than we find in this record, yet I do not believe in any such practice as obtains in such cases, whether for the purpose of enforcing the prohibitory law of our country or any other criminal law. The safety of the citizen should be the supreme law, and before that is taken away courts should require a proper observance of the rules of evidence and a proper consideration of the constitutional rights and safeguards thrown by the law around our citizens, for in so doing, and no other, lies not only the safety of our citizens but the safety of our country as well.

Coming now to an examination of this case and the charges preferred against defendant on which he was tried and stands convicted, and what do we find? That John Loehr owned the farm on which the still in this case was located and the building in which the still was placed. That he was therefore in possession of the still and the goods about to be manufactured into whisky. He admitted this and pleaded guilty. The defendant, a young man, testified he was working for John Loehr, for $3 per day, ploughing. Presumably, therefore, he was a common laborer and had no means, if he had the opportunity, to possess any still or anything in connection with the still. Had he purchased any materials for use in the manufacture of whisky or hauled any such materials out to the Loehr farm, it would have been susceptible of easy proof. How, under all the evidence in this case, was it possible for him to be convicted of the possession of anything or of maintaining a nui-

sance, as he was? The property and premises where the still was located was the property of Loehr. He was in possession as he says he was, not Warner. Hence all the charges of possession on which Warner was convicted without a scintilla of evidence must go for nothing. The only possible contention, under the evidence in this case, as to defendant's guilt, rests in the fact that enforcement officers found Warner there on the premises in John Loehr's absence, and from this fact the government assumes he was there employed by Loehr to operate the whisky making apparatus. But even should this have been proven, which, as will be seen, it was not, this would tend only to convict defendant under count 1 in the indictment, whereas he stands now under the opinion of a majority of this court convicted on all four counts in the indictment, on three of which there is no contention by any one there is sufficient evidence to convict. Is this as it should be? Is this a proper enforcement of the criminal laws of our country?

Coming now to the evidence tending to prove defendant's guilt under count 1 of the indictment, and what do we find? There is absolutely no direct or positive evidence. The sole reliance of the government is, and must rest upon, mere circumstantial evidence. This is admitted by the writer of the now prevailing opinion in this case in a memorandum he wrote in favor of granting a rehearing in this case, a part of the record in this case, but is not admitted in the majority opinion as now written. And how does he attempt to justify the fact that the circumstantial evidence found in the record is sufficient to support the conviction? On the thought that, to his mind, the circumstances in evidence, when compared, tend more strongly to sustain the guilt than the innocence of defendant. As this position must depend more upon the cast of mind than upon the circumstances themselves, I had not thought such a view of a case could be taken. I had thought the rule to be, before circumstantial evidence proved anything, this evidence must arise to such dignity of proof as to exclude any and every other reasonable hypothesis than the guilt of the accused. I had thought this theory of circumstantial evidence was simple hornbook law, not needing any authority in its support. If it does, the books are full of cases laying down this rule, that circumstantial evidence which fails to arise to this high degree of proof is no evidence at all, proves nothing.

Such, to my mind, is the law and the rule to be at all times applied or the presumption

of innocence with which a defendant stands before the bar of justice clothed by the law is not overcome. Who can say, who does say, in this case, the evidence in this case arises to such dignity as to exclude every other reasonable theory than the guilt of defendant?

In many cases very similar to this in point of fact, based on circumstantial evidence, the evidence in this case, or even stronger circumstantial evidence, has been held not sufficient to uphold conviction. In Graceffo v. United States, 46 F.(2d) 852, a case very similar to this in point of fact, the Court of Appeals, Third Circuit, held the evidence of a defendant's presence at a still at a given time would not justify a presumption of his possession of the still, liquor there found, or of his part in operating a still. That case, I think, lays down the proper rule. See, also, opinion of that great jurist, Judge Sanborn, in Salinger v. United States (C. C. A.) 23 F.(2d) 48. In no case do I find it is within the province of a trial judge to overrule a motion for a directed verdict, or a reviewing court to sustain a conviction by a comparison of the circumstantial facts in evidence, one circumstance with another, and upholding a conviction because to the mind of the court or judge so analyzing the facts they tend more strongly to prove the guilt of defendant than his innocence. Not only do I find no such warrant of law in any adjudicated case, but am confident no such authority can be found. Regarded under the true and safe rule of considering a case based solely on circumstantial evidence, there is in this case no evidence of the guilt of Warner under count 1 of the indictment, and not even a pretense of his guilt under the other three counts, and he should go acquit.