**UNITED STATES v. CORRY.**

No. 184, Docket 21562.

United States Court of Appeals
Second Circuit.

Argued May 8, 1950.

Decided June 23, 1950.

M. J. Blumenfeld and Thomas J. Dodd, Hartford, Conn., attorneys for defendant-appellant, Pelgrift, Dodd, Blumenfeld & Nair, Hartford, Conn., of counsel.

Adrian W. Maher, United States Attorney for the District of Connecticut, Hartford, Conn., for plaintiff-appellee, Thomas J. Birmingham, Assistant United States Attorney, Hartford, Conn., of counsel.

Before SWAN, AUGUSTUS N. HAND and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal from a judgment convicting the defendant John Wesley Corry of possessing certain $10 counterfeit Federal Reserve Notes, with intent to defraud, in violation of 18 U.S.C.A. § 472 Crimes and Criminal Procedure. The defendant contends that error was committed by the trial judge in the admission of certain evidence and in the failure to deal with certain matters in his charge to the jury. In our opinion no ground is shown for a reversal of the judgment.

The only important assignments of error relate to the admission in evidence of statements of Williams, Holley, Joines, and Evans offered to corroborate the testimony of Williams and Holley, whose testimony had been impeached by their alleged prior inconsistent statements. Holley and Williams testified at the trial that the defendant

was induced to come with them to Water-bury, Connecticut, and to bring with him $5,000 in cash because he wished to buy counterfeit ten-dollar notes at the rate of $50 good money for each $100 of counter-feit notes, and to secure the exchange of 96 counterfeit ten-dollar bills for 96 other bills. Holley also testified that the de-fendant gave him the 96 counterfeit ten-dollar bills in a paper bag on January 5, 1949, and that on January 7 he returned them to the defendant in Brooklyn before starting for Waterbury. This testimony of Holley was corroborated by Williams.

Pakul of the Waterbury police force was called on behalf of the defendant to im-peach the testimony of Williams and Hol-ley. He said that both Holley and Corry on January 7, and after their arrest, had stated that Corry was going to Waterbury to get into a gambling game. The Water-bury police detective Bendler, another of the defendant's witnesses, said that on Jan-uary 7, Joines had told him that Holley and Williams had said that the defendant was to be brought to Waterbury to get into a gambling game.

Later Holley, Williams, Joines, and Evans, were convicted on pleas of guilty in the Connecticut state court of conspiring to extort $5,000 from Corry, and the in-dictment contained allegations inconsist-ent with the testimony of Holley and Wil-liams at the trial of the case at bar, and indicating that the defendant had not vol-untarily taken possession of the counter-feit money but had had it placed with him by them.

The testimony of Holley and Williams at the trial that the defendant went to Waterbury to deal in counterfeit money was confirmed by that of the witness Evans, who said that on January 5, Wil-liams, Holley and Joines had told him that Corry was coming to Waterbury with counterfeit money (Record, ff. 92-94). The latter statements were made prior to the arrest of Williams, Holley, Evans, and Joines, and before any of them had an ap-parent motive to implicate Corry. On cross-examination of the witness Bendler, the prosecution introduced the statement made by Joines before a court stenographer as to what Holley and Williams had said on January 5. This statement was con-sistent with the testimony of Holley and Williams. On redirect examination of Williams, his prior consistent statement made to the police on the day of arrest was also introduced.

Judge Smith, who presided at the trial in the case at bar, gave the following clear instruction to the jury, to which no excep-tion was taken:

"You have two principal stories, of course: the story which is based upon the claim that there was a gambling game to which the defendant was being taken, or at least there had been represented to him that it was such a game, and that the counterfeits were planted upon him for use in the prospective swindle in coopera-tion with the police officer; and you have the story of the government witnesses that he was in possession of the counter-feits originally in New York and that the prospective swindle was based upon his bringing the counterfeits up and additional real money which would be mixed with the counterfeits and found in his possession as the basis for the swindle in cooperation with the police officer.

"And it is for you to determine from the evidence what the truth of the matter was, who had possession of these counterfeits, which of these stories is true, or whether either of them is true. Of course, you have some testimony from the police officers that the witnesses, when first questioned off the record, testified to the gambling story; you have the doubt cast upon that by the government's pointing out that the police officers did not question the discrepancy between that and the story taken down that same day by the reporters. You have, however, support for the gambling story in the recitation of it in the information filed by the state's attorney which was ad-mitted by those witnesses by their plea to it in the superior court; they pleaded guilty. However, you have also the testi-mony of those witnesses that they did not know what was in the information; and it is for you to determine whether they did or not, in determining whether they did then admit the truth of that version of the

story by their plea in the superior court. And, of course, you have the testimony as to the counterfeiting story on the stand and you have observed him on the stand and under cross-examination; and it is for you to determine what the truth was from the evidence which has been presented here before you. You have, on the one hand, the claim that the story of the government's witnesses was consistent in detail and you have the failure of the government to produce the claimed telegram that was testified to; but it is for you to determine from the evidence what the facts were and for you to determine whether it has been established by the evidence before you beyond a reasonable doubt that the defendant was guilty of the crime charged against him here."

There seems to have been no adequate objection to the introduction by the prosecution of prior statements by the witnesses Holley and Williams consistent with their testimony at the trial. The only objection was to one question asked of the witness Williams on re-direct on the ground of hearsay. The answer was allowed by the court not as evidence of the facts stated, but only as testing credibility; and, after that ruling was made by Judge Smith, defendant's counsel said "very well." This was either an intentional acquiescence in the ruling, or, at any rate, was sufficient to lead any judge to suppose that the objection had been withdrawn.

■ Moreover, the portion of the judge's charge which we have quoted shows that there was an issue as to whether statements were ever made to the police that the defendant was going to Waterbury merely to engage in gambling transactions and whether Williams and Holley were aware of the specific allegations in the indictment to which they pleaded guilty in the state court. No such problem was involved in our decision in United States v. Sherman, 2 Cir., 171 F.2d 619. Judge Cooley, in Stewart v. People, 23 Mich. 63, 74, 9 Am.Rep. 78, as well as Professor Wigmore, in IV Wigmore on Evidence § 1126, have pointed out that where the issue as to whether impeaching statements

were made is involved, contrary statements of the witness should be admitted. Moreover, it seems to have been indicated by Mr. Justice Woodbury in Conrad v. Griffey, 11 How. 480, 491, 13 L.Ed. 779, that statements by a witness in accordance with his testimony at the trial are admissible after impeachment if made before there is inducement to make these statements because of pressure or personal interest. See IV Wigmore § 1126, footnote 4. This would apply to the confirmatory statements said to have been made by Williams and Holley on January 5, 1949, before their arrest. If these statements were competent—as they seem to have been in view of the reasoning of Justice Woodbury and of Judge Cooley, which we have just mentioned—the subsequent confirmatory statements made after arrest were merely cumulative and should not upset a verdict where no proper objection was taken to the admission of those statements. In our opinion there was no prejudicial error committed, and in any event no error which ought to be noticed on appeal under the provisions of Criminal Rule 52(b), 18 U.S.C.A.

■ Criticism is also made of the admission of evidence tending to prove that the defendant became interested in counterfeiting in 1945, some three years before the incident in suit. This evidence was competent as bearing on the intent of the defendant, if shown to have been in the possession of counterfeit money. It is argued that the evidence is too remote in time to furnish any proof of intent that would attach to occurrences so long afterwards. The testimony certainly was some indication of intent to defraud by the use of counterfeit money, and its admissibility was a matter fully within the discretion of the trial judge. II Wigmore § 316(2).

■ Finally, it is claimed that the failure of the court to give any instructions to the jury as to the evidence of the defendant's good character was error. No such instruction was asked, and we have recently held that the failure specifically to discuss the matter in the charge was not error in these circumstances. United States

v. Antonelli Fireworks Co., 2 Cir., 155 F. 2d 631, 639; certiorari denied, 329 U.S. 742, 67 S.Ct. 49, 91 L.Ed. 640.

For the foregoing reasons, the judgment is affirmed.