**UNITED STATES of America,**

v.

**Harold LEITNER, Defendant.**

United States District Court
S. D. New York.
Feb. 27, 1962.

Morton S. Robson, U. S. Atty., for the United States. Daniel P. Hollman, Asst. U. S. Atty., New York City, of counsel.

Nicholas Atlas, New York City, for defendant.

FREDERICK van PELT BRYAN, District Judge.

Defendant Leitner was tried before a jury on an indictment charging, in four counts, passing and possession of two counterfeit $100 Federal Reserve notes in violation of 18 U.S.C. § 472. The first count charged that on or about May 20, 1960 Leitner wilfully and knowingly, and with intent to defraud, passed one such counterfeit note. The second count charged possession of that note with knowledge and intent to defraud. The third and fourth counts made similar charges concerning respectively the passing and possession of a second such note on or about May 24, 1960.

The jury returned a verdict of guilty on Counts 1 and 2 and acquitted defendant on Counts 3 and 4.

Defendant has moved, pursuant to Rule 29, F.R.Cr.P., 18 U.S.C., for judgment of acquittal on the two counts on which he was convicted, or in the alternative for a new trial under Rule 33. He moves upon three grounds:

(1) That there was insufficient evidence to support the conviction; (2) that it was prejudicial error to join Counts 3 and 4 with Counts 1 and 2, and for the court to deny a motion for a separate trial; and (3) that it was prejudicial error to admit testimony as to similar acts of the defendant in passing other counterfeit notes as bearing on the issue of defendant's intent.

The evidence as to the passing and possession of the counterfeit note alleged in Counts 1 and 2 is virtually undisputed except on the issue of defendant's knowledge and intent.

During the late spring and summer defendant Leitner worked as a singing waiter and entertainer in the New Roxy Hotel at Loch Sheldrake near Monticello in the Catskills. On Friday, May 20, 1960, he arrived at the hotel by bus from New York City. During the evening of that day John Talabisco, a student who was a part-time waiter, and who shared quarters with Leitner, asked him for repayment of a $10 loan. Leitner gave him a $100 bill and asked Talabisco to have it changed and give him back $90.

Shortly before midnight Talabisco went to Brown's Hotel, some four miles away, to see Stieglitz, one of its employees, to whom Talabisco owed $10. Stieglitz was unable to change the $100 bill and referred Talabisco to Brown, one of the proprietors of the hotel, who changed the $100 note for him. Talabisco then paid Stieglitz the $10 he owed him, returned to the New Roxy and went to bed.

About an hour later Leitner woke Talabisco and said that he had just discovered that the $100 note was counterfeit. He asked Talabisco where it had been changed. Talabisco told him. Leitner then asked Talabisco to hold on to the $90 which he still had and to try to get the bill back from Brown who had changed it.

The next morning Talabisco went to see Brown, told him that he had learned that the bill was no good and asked for it back. Brown told him that he no longer had it but had given it to one of his waiters who had left for Florida because of the illness of his mother.

Later that day Leitner also went to see Brown and repaid him the $100. Up to that time there had been no suggestion from anyone but Leitner that the bill given by him to Talabisco and by Talabisco to Brown was counterfeit.

During the course of the next week the counterfeit bill came into the hands of the Secret Service. On May 27, 1960 Agent Motto of the Secret Service arrived at Loch Sheldrake, made an investigation and took a statement from Leitner. About two weeks later Leitner was arrested in New York after investigation of an incident at the Roger Smith Hotel involving the passing of another $100 counterfeit bill which was the subject of the third and fourth counts in the indictment.

Leitner, who took the stand in his own defense, both in his statement to the Secret Service and in his testimony, admitted that he had passed the $100 to Talabisco, that it was counterfeit and

that the events at Loch Sheldrake which had been testified to by the Government's witnesses took place.

However, Leitner strenuously denied that he knew the note was counterfeit when he passed it to Talabisco or that he had any intent to defraud anyone. He claimed that he had received the note the day he gave it to Talabisco on the bus en route from New York to Loch Sheldrake from a man who called himself "Jerry", whom he had never seen before. He said that "Jerry" had given him the note in payment of winnings in a gin rummy game on the bus and that "Jerry" had left the bus at a stop in the Catskills before it reached Loch Sheldrake. Leitner identified "Jerry" only as a musician with red hair, of average build. He said he knew nothing more about him. He claimed that he discovered the note was counterfeit only after he had given it to Talabisco when he received a telephone call from someone who said he was "Jerry", who laughed at him and who told him, "His money was no good". He said that as soon as he heard this he attempted to get the note back from Talabisco and the next day, before there was any complaint about the bill, had repaid the $100 to Brown.

There was testimony by Talabisco, supported by testimony of Brown, to the effect that Leitner had written down the serial numbers of the bill before he had given it to Talabisco. This Leitner denied.

Leitner also denied any connection with the incident at the Roger Smith Hotel on May 24, 1960 which was the subject of the third and fourth counts in the indictment, and an incident at the Hotel Greystone on February 5, 1960 involving the passing of a third counterfeit $100 bill. Both of these incidents were relied upon by the Government as evidence of similar acts bearing on the issue of criminal intent.

In support of Counts 3 and 4 of the indictment the Government introduced evidence to the effect that on May 24, 1960, four days after the Loch Sheldrake incident, another $100 counterfeit bill was passed to the cashier of the coffee shop of the Roger Smith Hotel at Lexington Avenue and 47th Street in New York City. Reyes, the cashier who received the counterfeit bill, testified that the man who gave him the bill said he used to work at the Kismet Restaurant, two doors east of the Roger Smith on 47th Street, where Leitner had formerly worked, and thought that Leitner was the man who had passed the bill. However, on cross-examination Reyes was "not quite sure that Leitner was the man" although he looked like him. Reyes had previously identified a photograph of Leitner as "looking like the guy".

The Government urged that from this evidence the jury should find Leitner guilty on Counts 3 and 4 and also that this was evidence of a similar act bearing on the question of intent under Counts 1 and 2. However, as I have mentioned, the jury acquitted Leitner on Counts 3 and 4.

Evidence was also introduced as to the passing of a third counterfeit note on February 5, 1960 at the Greystone Hotel on 91st Street and Broadway in New York City. The desk clerk at the hotel, Miss Thome, testified that, on the morning of that day, a man had registered as a guest for a week. He gave her a $100 bill in advance payment of the weekly charge of $58 and she gave him the change. Among the hotel's receipts for the day which were deposited were two $100 bills, one of which was counterfeit. According to Miss Thome, the man who had so registered returned to the desk during the course of the afternoon and said he was unable to stay for a week. She then refunded to him all of the $58 charged for the week, less $5.25 which was the charge for one day.

Miss Thome positively identified the man who had registered under these circumstances as Leitner. She first thought that he had registered under the name of Rosen, but later, when the registration card was produced, recollected that he had registered as Clinton H. Scott.

Leitner denied that he had ever registered at the Greystone Hotel or had ever

been there. He produced a physician who testified that Leitner had been in his office at 79th Street and West End Avenue on that day for a 2:15 p.m. appointment and that he had undergone electro therapy for a back condition for an hour or more. In addition, an impartial handwriting expert from the New York City Police Department was called as a witness by the court with the consent of both the parties to examine the Greystone registration card signed Clinton H. Scott. After comparison of the signature with specimens of Leitner's handwriting, the expert was of the opinion that the signature had not been written by Leitner.

The evidence as to the identification and tracing of the counterfeit notes was undisputed. Defendant also introduced evidence as to his good reputation for truth and veracity.

### I.

Before discussing the sufficiency of the evidence to support the jury verdict of guilty on Counts 1 and 2, I will first deal with the defendant's claims of specific error.

██ There is no merit to defendant's claim of improper joinder of Counts 1 and 2 with Counts 3 and 4. The offenses charged were "of the same or similar character" and were properly joined in the same indictment under Rule 8, F.R.Cr.P. The facts as to the charges were relatively simple and the two were easily distinguishable in the minds of the jury, as was demonstrated by their verdict. There was no prejudice to the defendant in trying the four counts together and no error in denying his motion for a separate trial on Counts 3 and 4. (Rule 14, F.R.Cr.P.) See Schaffer v. United States, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960). There is plainly nothing inconsistent about the verdict of guilty on Counts 1 and 2 and not guilty on Counts 3 and 4. But in any event, "consistency in the verdict is not necessary". Dunn v. United States, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356.

Defendant argues, however, that he was prejudiced by the trial of all four counts together since without the evidence of the Roger Smith incident, which was the subject of Counts 3 and 4, there was insufficient evidence of criminal intent to permit the jury to find him guilty on Counts 1 and 2. Disregarding other evidence of intent which I will refer to later, and assuming arguendo that there would not have been sufficient evidence of intent without the Roger Smith incident, this still does not indicate that there was error in permitting all counts to be tried together.

██ It is well settled that, in a counterfeiting case, evidence of passing or attempting to pass similar counterfeit notes on other occasions is admissible on the question of defendant's criminal intent which is indispensable to proof of the offense. York v. United States, 241 F. 656 (9 Cir. 1916); United States v. Corry, 183 F.2d 155, 157 (2 Cir. 1950); Carrullo v. United States, 184 F.2d 743 (8 Cir. 1950); Marson v. United States, 203 F.2d 904 (6 Cir. 1953); II Wigmore on Evidence, §§ 309, 312 (3 ed. 1940); Note, Other Crimes Evidence At Trial: Of Balancing and Other Matters, 70 Yale L.J. 763, 767 (1961). This is a recognized exception to the general rule that evidence of the commission of similar crimes tending to show the disposition or propensity of the accused to commit the crime charged is inadmissible. Cf. United States v. Smith, 283 F.2d 760, 763 (2 Cir. 1960), cert. den. 365 U.S. 851, 81 S.Ct. 815, 5 L.Ed.2d 815; Paris v. United States, 260 F. 529 (8 Cir. 1919).

The jury's verdict of acquittal on Counts 3 and 4 showed that they did not believe that the guilt of the defendant on these counts had been established beyond a reasonable doubt. Indeed, the jury may have gone farther and totally disbelieved that the defendant had passed the $100 counterfeit note at the Roger Smith Hotel. On the other hand, the jury may have believed that while there was insufficient to convince them of the defendant's guilt on these counts beyond a reasonable doubt, there was likelihood,

on the evidence, that Leitner was the person who passed the bill to Reyes, the cashier, and have taken that circumstance into account as bearing on the question of his guilty knowledge and criminal intent under Counts 1 and 2. There is, of course, no way of knowing what the thinking of the jury was on this subject.

But in either event defendant could not have been prejudiced. If the jury believed that the defendant was not involved in the Roger Smith incident at all, then he could not have been harmed. If they considered that it was reasonably likely that he was the man who passed the bill they were entitled to take that incident into account as evidence of a similar transaction bearing on defendant's criminal intent under Counts 1 and 2. Such evidence could have been introduced for that purpose alone even had Counts 3 and 4 been omitted from the indictment and the jury would have been entitled to draw reasonable inferences from it.

There is no requirement that there must be no reasonable doubt as to each link in the chain of proof against an accused. The jury is entitled to consider all the evidence and to draw such reasonable inferences from it as it may see fit. As Judge Clark said in United States v. Valenti, 134 F.2d 362, 364 (2 Cir. 1943), cert. den. 319 U.S. 761, 63 S.Ct. 1317, 87 L.Ed. 1712:

"The requirement of proof beyond a reasonable doubt is a direction to the jury, not a rule of evidence; it operates on the whole case, and not on separate bits of evidence each of which need not be so proven; and it cannot be accorded a quantitative value other than as a general cautionary admonition. Wigmore on Evidence, 3d Ed. 1940, §§ 216, n. 4, 2497; Hinshaw v. State, 147 Ind. 334, 47 N.E. 157, 171, 172; Jamison v. People, 145 Ill. 357, 34 N.E. 486, 492. It is the court's function to decide whether evidence is competent to justify certain inferences; it is not the court's function to decide which of various inferences should be drawn. Nor is the jury to be limited to drawing only the inference most favorable to the accused. 'Such a rule would virtually eliminate circumstantial evidence as a means of proof. * * * It is not the generally accepted rule.' State v. Murphy, 124 Conn. 554, 1 A.2d 274, 278, citing Wigmore, op. cit., and cases; L. Hand, J., in United States v. Becker, 2 Cir., 62 F.2d 1007, 1010."

What has just been said concerning the Roger Smith incident applies also to the Greystone incident, the evidence as to which was clearly admissible as evidence of a similar transaction bearing on intent. It occurred only five months before the Loch Sheldrake occurrence and was sufficiently close in point of time to be admissible. York v. United States, supra; United States v. Corry, supra.

Defendant contends that it was error to admit this evidence or, at the least, it should have been stricken because there was insufficient to show that defendant was the man involved. But the identification by Miss Thome, the desk clerk, was positive. The testimony of Leitner's physician, if believed, did not establish a conclusive alibi. It is true that the Police Department handwriting expert was of the opinion that Leitner did not sign the name "Clinton H. Scott" on the Greystone registration card. But the jury was properly instructed that they were not required to accept his opinion evidence though it was entitled to great weight, and that they might draw their own conclusions from all the evidence on the subject of identification. They were also told of the limited purpose for which the evidence as to the Greystone incident was admitted, that there was strong support for the view that the cashier was mistaken in her identification and that if they so believed they should disregard the Greystone incident entirely.

Again it is impossible to know what went on in the minds of the jury, but there was no requirement that this incident had to be proved beyond a reason-

able doubt and the inferences were for the jury. It cannot be said that the evidence as to the Greystone incident was either inadmissible or should have been stricken.

## II.

 Finally, we come to the question of whether the evidence as a whole was sufficient to support the verdict of guilty on Counts 1 and 2.

The test of the sufficiency of the evidence for the jury in a criminal prosecution currently applicable in this circuit is not entirely free from doubt. In United States v. Monica, 295 F.2d 400 (2 Cir. 1961), Judge Friendly pointed out that the test was phrased in United States v. Costello, 221 F.2d 668, 671 (2 Cir. 1955), aff'd 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956), as simply that "the evidence would have been enough in a civil ac-

tion",[1] whereas, in Cuthbert v. United States, 278 F.2d 220, 224 (5 Cir. 1960), it was stated that the evidence must be "substantial enough to establish a case from which the jury may infer guilt beyond a reasonable doubt."[2] The court went on to hold that the evidence there met either test.

In United States v. Lefkowitz, 284 F.2d 310, 315 (2 Cir. 1960) this Circuit applied the test of the Cuthbert case and in Unitted States v. Robertson, 298 F.2d 739 (2 Cir., decided February 2, 1962), Judge Smith expressed a similar view, stating:

"Appellants concede, as they must, that we must take that view of the evidence most favorable to the government and sustain the verdict if there is in the record substantial evidence to support it, sufficient to convince a jury beyond a reasonable doubt."

1. See, also, United States v. Stone, 282 F.2d 547, 551 (2 Cir. 1960), cert. den. 364 U.S. 928, 81 S.Ct. 353. 5 L.Ed.2d 266; United States v. Masiello, 235 F. 2d 279 (2 Cir. 1956); United States v. Castro, 228 F.2d 807 (2 Cir. 1956), cert. den. 351 U.S. 940, 76 S.Ct. 838, 100 L.Ed. 1477; United States v. Costello, 221 F.2d 668, 671 (2 Cir. 1955), aff'd 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397; United States v. McKee, 220 F.2d 266 (2 Cir. 1955); United States v. Weissman, 219 F.2d 837 (2d Cir. 1955); United States v. Sherman, 171 F.2d 619, 621 (2 Cir. 1948), cert. den. sub nom. Grimaldi v. United States, 337 U.S. 931, 69 S.Ct. 1484, 93 L.Ed. 1738; United States v. Spagnuolo, 168 F.2d 768, 770 (2 Cir. 1948), cert. den. 335 U.S. 824, 69 S.Ct. 48, 93 L.Ed. 378; United States v. Greenstein, 153 F.2d 550 (2 Cir. 1946); United States v. Picarelli, 148 F.2d 997 (2 Cir. 1945), cert. den. 326 U.S. 722, 66 S.Ct. 27, 90 L.Ed. 427; United States v. Cohen, 145 F.2d 82, 86 (2 Cir. 1944); United States v. Andolschek, 142 F.2d 503, 504–505 (2 Cir. 1944); United States v. Feinberg, 140 F.2d 592, 594 (2 Cir. 1944), cert. den. 322 U.S. 726, 64 S.Ct. 943, 88 L.Ed. 1562. But see Fraina v. United States, 255 F. 28, 35 (2 Cir. 1918), showing that this Circuit applied the majority test before the present rule became established.

2. See, also, Smith v. United States, 210 F.2d 496, 499 (1 Cir. 1954), aff'd 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192; Yoffe v. United States, 153 F.2d 570 (1 Cir. 1946); United States v. Matsinger, 191 F.2d 1014, 1016 (3 Cir. 1951); Paul v. United States, 79 F.2d 561, 563–564 (3 Cir. 1935); Yusem v. United States, 8 F.2d 6, 8 (3 Cir. 1925); Chicco v. United States, 284 F. 434 (4 Cir. 1922); Riggs v. United States, 280 F.2d 949 (5 Cir. 1960); United States v. Bardin, 224 F. 2d 255, 257 (7 Cir. 1955), cert. den. 350 U.S. 883, 76 S.Ct. 134, 100 L.Ed. 778, rehearing den. 350 U.S. 919, 76 S.Ct. 193, 100 L.Ed. 805; United States v. Yeoman-Henderson, Inc., 193 F.2d 867 (7 Cir. 1952); Wright v. United States, 227 F. 855, 857 (8 Cir. 1915), and Union Pacific Coal Co. v. United States, 173 F. 737, 740 (8 Cir. 1909); Stoppelli v. United States, 183 F.2d 391 (9 Cir. 1950), cert. den. 340 U.S. 864, 71 S.Ct. 88, 95 L.Ed. 631; Remmer v. United States, 205 F.2d 277, 287 (9 Cir. 1953), vacated 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654, rehearing granted 348 U.S. 904, 75 S.Ct. 288, 79 L.Ed. 710, reaffirmed 9 Cir., 222 F.2d 720; 350 U.S. 377, 76 S.Ct. 425, 100 L.Ed. 435, vacated and remanded; Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229 (1947), cert. den. 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850; Isaac v. United States, 109 U.S.App.D.C. 34, 284 F.2d 168 (1960). Warner v. United States, 60 F.2d 700 (10 Cir. 1932), and Moore v. United States, 56 F.2d 794, 796 (10 Cir. 1932), seem to follow the Second Circuit rule.

The view expressed in the Lefkowitz and Robertson cases is in accord with the test in most other circuits and with such cases as Mortensen v. United States, 322 U.S. 369, 374, 64 S.Ct. 1037, 88 L.Ed. 1331 (1944), and American Tobacco Co. v. United States, 328 U.S. 781, 787, 66 S.Ct. 1125, 90 L.Ed. 1125 Note 4 (1946). See, also, United States v. National Association of Real Estate Boards, 339 U.S. 485, 493, 70 S.Ct. 711, 94 L.Ed. 1007 (1950).

However, here, as in the Monica case it makes no difference whether the test of the Costello case or that of the Cuthbert case is applied for the evidence met either test.

It was not disputed that Leitner had passed the $100 note to Talabisco on the night of May 20, 1960, or that the note was counterfeit. The only question open before the jury was whether he did so with knowledge that it was counterfeit and with intent to defraud.

On that issue the evidence was quite sufficient to permit the jury to find guilt beyond a reasonable doubt. Set against the background of the passing of the note, Leitner's own story of winning it in a gin rummy game on the bus from a stranger named "Jerry", otherwise virtually unidentified, was, to say the least, improbable. So, too, was his testimony as to the telephone call from "Jerry" in which he claimed to have learned that the note was counterfeit. The jury was not required to accept his testimony on this subject and was at liberty to disbelieve it in the light of all the circumstances. Credibility was for them.

There was also testimony that Leitner was consistently short of money, from which the jury could have inferred that it was unlikely that the $100 note had legitimately come into his possession, and that he had made a written note of the numbers of the bill before giving it to Talabisco. The latter evidence he disputed. This evidence, if believed, was in itself some indication of guilty knowledge.

This is quite apart from the evidence as to the similar transactions in the Roger Smith and Greystone Hotels, to which reference has already been made, and which the jury was entitled to take into account on this issue.

Even on the assumption that each of these separate strands of evidence was weak and equivocal in itself, taken together they were quite sufficient to form a web from which the jury could have found beyond a reasonable doubt that Leitner passed the bill with knowledge that it was counterfeit and with intent to defraud.[3]

The defendant's motions for judgment of acquittal and for a new trial are in all respects denied.

Counsel will be notified of the date for sentence.

It is so ordered.

---

3. See, Note, Sufficiency of Circumstantial Evidence In a Criminal Case, 55 Columbia L. Rev. 549 (1955).