**UNITED STATES of America,**
**Appellee,**

v.

**Ralph Kelly TAYLOR, II, Appellant.**

**No. 832, Docket 72-1165.**

United States Court of Appeals, Second Circuit.

Argued June 7, 1972.

Decided July 6, 1972.

Brian F. Mumford, Asst. U. S. Atty. (James M. Sullivan, Jr., U. S. Atty., N. D. N. Y., of counsel), for appellee.

Freling H. Smith, Albany, N. Y. (Cooper, Erving & Savage, Albany, N. Y., of counsel), for appellant.

Before FRIENDLY, Chief Judge, and LUMBARD and MULLIGAN, Circuit Judges.

FRIENDLY, Chief Judge:

 The sole question meriting discussion in this opinion [1] is the suffi-

---

1. Two other questions are raised—the fact that the indictment charged possession of counterfeit Treasury notes, whereas the counterfeit was actually Federal Reserve notes, and an alleged error in charging that Taylor might be found guilty as an aider or abettor. The variance affected no substantial rights. As Judge Duniway wrote, in a quite similar case, "There could have been no surprise or prejudice. And the particulars given in the indictment are sufficient to protect against double jeopardy." Heisler v. United States, 394 F.2d 692, 694 (9 Cir.), cert. denied, 393 U.S. 986, 89 S.Ct. 463, 21 L.Ed.2d 448 (1968). Indeed, Taylor's trial counsel admitted that prior to trial he was not aware of any difference between Treasury notes and Federal Reserve notes. Appellant's citations of such

ciency of the evidence to warrant submission to the jury of the question whether Taylor "with intent to defraud" kept in possession and concealed a quantity of counterfeit Federal Reserve notes found in a car which Taylor, accompanied by one MacDonald, was driving from Canada into the United States.

## I.

Counsel for appellant asks us, as many others have done, to overrule the so-called "Second Circuit rule," first enunciated by Judge Learned Hand in United States v. Feinberg, 140 F.2d 592, 594 (2 Cir.), cert. denied, 322 U.S. 726, 64 S.Ct. 943, 88 L.Ed. 1562 (1944), and later challenged, at great length but without success, by Judge Jerome Frank in United States v. Masiello, 235 F.2d 279, 285 (2 Cir.), cert. denied, 352 U.S. 882, 77 S.Ct. 100, 1 L.Ed.2d 79 (1956) (concurring opinion). The "rule" in this circuit has been that "the standard of evidence necessary [for the judge] to send a case to the jury is the same in both civil and criminal cases," even though the jury must apply a higher standard before rendering a verdict in favor of the proponent in the latter. United States v. Feinberg, *supra*, 140 F.2d at 594. Despite our reverence for Judge Hand, perhaps in part because of our desire to remove one of his rare ill-advised opinions from public debate, we agree that the time for overruling the *Feinberg* "single test" standard has arrived.

■■ It is, of course, a fundamental of the jury trial guaranteed by the Constitution that the jury acts, not at large, but under the supervision of a judge. See Capital Traction Company v. Hof,

174 U.S. 1, 13–14, 19 S.Ct. 580, 43 L.Ed. 873 (1899). Before submitting the case to the jury, the judge must determine whether the proponent has adduced evidence sufficient to warrant a verdict in his favor. Dean Wigmore considered, 9 Evidence § 2494 at 299 (3d ed. 1940), the best statement of the test to be that of Mr. Justice Brett in Bridges v. Railway Co. [1874] L.R. 7 H.L. 213, 233:

[A]re there facts in evidence which if unanswered would justify men of ordinary reason and fairness in affirming the question which the Plaintiff is bound to maintain?

■ It would seem at first blush— and we think also at second—that more "facts in evidence" are needed for the judge to allow men, and now women, "of ordinary reason and fairness" to affirm the question the proponent "is bound to maintain" when the proponent is required to establish this not merely by a preponderance of the evidence but, as all agree to be true in a criminal case, beyond a reasonable doubt. Indeed, the latter standard has recently been held to be constitutionally required in criminal cases. In re Winship, 397 U.S. 358, 361–364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). We do not find a satisfying explanation in the *Feinberg* opinion why the judge should not place this higher burden on the prosecution in criminal proceedings before sending the case to the jury.

After acknowledging "that in their actual judgments the added gravity of the consequences [in criminal cases] makes them [the judges] more exacting," 140 F.2d at 594, Judge Hand based the refusal to require a higher standard of

---

cases such as Ex Parte Bain, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887), which severely restrict the power of a trial court to "amend" the indictment, are simply not relevant here. The trial judge here did not change the indictment in any way, and he charged the jury on the original language of the Grand Jury.

No objection was taken to the charge below, and we fail to see what basis there would have been for making one. Al-

though it is preferable that the indictment charge a violation of 18 U.S.C. § 2 if the prosecution intends to proceed on a theory of aiding and abetting, the court may charge the jury on such a theory when the evidence so warrants, whether or not 18 U.S.C. § 2 was charged in the indictment. See, e. g., Levine v. United States, 430 F. 2d 641, 643 (7 Cir. 1970), cert. denied, 401 U.S. 949, 91 S.Ct. 962, 28 L.Ed.2d 232 (1971).

sufficiency in criminal cases on authority and a belief that "[w]hile at times it may be practicable" to "distinguish between the evidence which should satisfy reasonable men, and the evidence which should satisfy reasonable men beyond a reasonable doubt[,] . . . in the long run the line between them is too thin for day to day use." *Id.*

However the argument from authority may have stood in 1944, that battle has now been irretrievably lost. See 2 C. Wright, Federal Practice and Procedure § 467, at 255–257 (1969), and cases there cited. Almost all the circuits have adopted something like Judge Prettyman's formulation in Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, 232–233, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). This, along with its rationale, reads as follows:

> The functions of the jury include the determination of the credibility of witnesses, the weighing of the evidence, and the drawing of justifiable inferences of fact from proven facts. It is the function of the judge to deny the jury any opportunity to operate beyond its province. The jury may not be permitted to conjecture merely, or to conclude upon pure speculation or from passion, prejudice or sympathy. The critical point in this boundary is the existence or non-existence of reasonable doubt as to guilt. If the evidence is such that reasonable jurymen must necessarily have such a doubt, the judge must require acquittal, because no other result is permissible within the fixed bounds of jury consideration. But if a reasonable mind might fairly have a reasonable doubt or might fairly not have one, the case is for the jury, and the decision is for the jurors to make. The law recognizes that the scope of a reasonable mind is broad. Its conclusion is not always a point certain, but, upon given evidence, may be one of a number of conclusions. Both innocence and guilt beyond a reasonable doubt may lie fairly within the limits of reasonable conclusion from given facts. The judge's function is exhausted when he determines that the evidence does or does not permit the conclusion of guilt beyond a reasonable doubt within the fair operation of a reasonable mind.

> The true rule, therefore, is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If he concludes that upon the evidence there must be such a doubt in a reasonable mind, he must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If he concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter. (footnotes omitted)

On Judge Hand's second point, while we agree there will be few cases where application of Judge Prettyman's test would produce a different result, we cannot say these are non-existent, as indeed he conceded. The Supreme Court has recognized the feasibility of a standard intermediate between preponderance and proof beyond a reasonable doubt, to wit, clear and convincing evidence. Chaunt v. United States, 364 U.S. 350, 353–354, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960) (denaturalization); Woodby v. INS, 385 U.S. 276, 285–286, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966) (deportation). Implicit in the Court's recognition of varying burdens of proof is a concomitant duty on the judge to consider the applicable burden when deciding whether to send a case to the jury.

A further reason for wiping the rule enunciated in United States v. Feinberg

off the books is that in practice it is no longer followed in this circuit when reviewing the denial of motions for acquittal for insufficiency of the evidence. In numerous cases this court, without having expressly overruled *Feinberg*, has announced a stricter standard. See, e. g., United States v. Lefkowitz, 284 F.2d 310, 315–316 (2 Cir. 1960); United States v. Robertson, 298 F.2d 739 (2 Cir. 1962); United States v. Kahaner, 317 F.2d 459, 467–468 (2 Cir.), cert. denied, Corallo v. United States, 375 U.S. 835–836, 84 S.Ct. 62, 11 L.Ed.2d 65 (1963); United States v. Glasser, 443 F.2d 994, 1006 (2 Cir.), cert. denied, 404 U.S. 854, 92 S.Ct. 96, 30 L.Ed.2d 95 (1971); United States v. Brown, 456 F.2d 293, 295 (2 Cir. 1972). In other cases we have tested sufficiency under the stricter formulation as well as the *Feinberg* test, thereby implying that the latter was not strong enough. See, e. g., United States v. Monica, 295 F.2d 400, 401 (2 Cir. 1961), cert. denied, 368 U.S. 953, 82 S.Ct. 395, 7 L.Ed.2d 386 (1962); United States v. Coblentz, 453 F.2d 503 (2 Cir.), cert. denied, 406 U.S. 917, 92 S.Ct. 1766, 32 L.Ed.2d 116 (1972); United States v. Iannelli, 461 F.2d 483, 486 n. 4 (2 Cir. 1972); United States v. Massarotti, 462 F.2d 1328, —— (2 Cir. 1972). Some of our district judges have sensed that a change may have occurred. Judge Bryan seems to have been the first to perceive this, see United States v. Leitner, 202 F.Supp. 688, 693–694 (S.D.N.Y.1962), aff'd, 312 F.2d 107 (2 Cir. 1963). Other district judges have followed, some expressly, see United States v. Melillo, 275 F.Supp. 314, 317–318 (E.D.N.Y.1967); United States v. Chas. Pfizer & Co., 281 F.Supp. 837, 839 (S.D.N.Y.1968), rev'd on other grounds, 426 F.2d 32 (2 Cir. 1970), aff'd by an equally divided court, 404 U.S. 548, 92 S.Ct. 731, 30 L.Ed.2d 721 (1972), and others, we have no doubt, silently. Yet it would be wholly understandable that other district judges still feel bound to follow *Fein-*

*berg*, thereby occasionally, although rarely, producing a result unfair to the defendant unless it were reversed by this court, as we think it would be. Leaving *Feinberg* on the books thus creates a trap for district judges, a paper sword for prosecutors, and an unwarranted burden upon criminal defendants. Although we would normally invoke in banc consideration before taking such a step, *Feinberg* has already been so eroded that we have deemed it sufficient to circulate this opinion to the judges in regular active service, all of whom have expressed approval of the ruling here made.[2]

 In thus overruling the "single test" rule of sufficiency, we deem it desirable, lest we arouse undue expectations of defense counsel, to make clear some things we are *not* deciding. We in no way subscribe to the doctrine that "where the Government's evidence is circumstantial it must be such as to exclude every reasonable hypothesis other than that of guilt," which continues to be frequently urged by defense lawyers despite the Supreme Court's repudiation of it in Holland v. United States, 348 U.S. 121, 139–140, 75 S.Ct. 127, 137, 99 L.Ed. 150 (1954). We likewise do not accept the view, stated in an opinion cited by appellant, that "[A]n inference may not properly be relied upon in support of an essential allegation if an opposite inference may be drawn with equal consistency from the circumstances in proof." United States v. Litberg, 175 F.2d 20, 21 (7 Cir. 1949). Apart from the fact that the *Curley* test must be applied to the totality of the Government's case and not to each element, since, as pointed out in United States v. Monica, *supra*, 295 F.2d at 401–402, any fact may gain color from others, even in the rare case where the prosecution depended on a single piece of evidence the question would be whether the reasonable mind of a juror could draw such an inference from it so that

2. While agreeing with the result here reached, Judge Hays believes that formal *en banc* procedures should be followed.

he "might fairly conclude guilt beyond a reasonable doubt." Finally, our ruling in no way affects the established rule that the weighing of credibility is for the jury, not the judge. See United States v. Weinstein, 452 F.2d 704, 713–714 (2 Cir. 1971), cert. denied, Grunberger v. United States, 406 U.S. 917, 92 S. Ct. 1766, 32 L.Ed.2d 116 (1972).

## II.

 As happens not infrequently, appellant's victory on the legal point dealt with above is, for him, an empty one. Study of the transcript shows that the Government's case was far stronger than indicated in the briefs.

Taylor and MacDonald were stopped by a customs agent, while entering from Canada by car, at the border-crossing at Port Massena, N. Y., for routine questioning. Because Taylor had no proof of ownership of the vehicle, he and MacDonald were asked into the customs office for a more thorough investigation. When the two investigating customs agents began an inspection of the vehicle, thirty-four counterfeit $20 Federal Reserve notes fell from a magazine which was on the back seat. Forty-four $20 notes were subsequently found in four road maps of Ontario, Michigan, and two groups of other states, which had been lying on the dashboard. Taylor and MacDonald were placed under arrest. Four days later, Taylor admitted to one of the arresting agents, after proper warnings, that the magazine in which thirty-four of the bills were found belonged to him.

Warren Rudderow testified that he had given the car to Taylor in Orlando, Florida; that at the time of the transfer the car contained the magazine and maps other than those in which the bills were found; and that the car had not then contained any counterfeit bills. A Secret Service Agent testified that the bills were clearly counterfeit and not of "deceptive" quality. He based his conclusions on several factors, including the fact that the seventy-eight bills had only four different serial numbers, the printing of the Treasury seal was "poor" and "just a smudge," and the paper was heavy and lacked the distinctive red and blue fibers. The bills were offered in evidence.

It would be most unusual for a person having $1560 in what he believed to be lawful money to carry it scattered in the interior of an automobile rather than on his person or in a locked compartment. It would be still more unusual to select a magazine and four road maps as the places for custody. The evidence clearly warranted—indeed almost compelled—the inference that the defendants had placed the counterfeit bills in the car sometime after they received it from Rudderow and had secreted them in the durable magazine and in road maps acquired during their northbound journey. The curious method adopted for transporting the bills together with the testimony of the Secret Service Agent afforded ample basis for a reasonable man to be convinced beyond reasonable doubt that the appellant possessed both the knowledge that the bills were counterfeit and the required specific intent to defraud. Although the number of counterfeit bills discovered in United States v. Petrone, 185 F.2d 334, 335–336 (2 Cir. 1950), cert. denied, 340 U.S. 931, 71 S.Ct. 493, 95 L.Ed. 672 (1951) was somewhat larger than in this case, the reasoning there as to an inescapable inference of intent to defraud is equally applicable here.

Affirmed.