584 F.2d 974
 1978-2 Trade Cases 62,310
 Unpublished Disposition
NOTICE: Second Circuit Local Rule 0.23 states unreported opinions shall not be cited or otherwise used in unrelated cases.
United States
v.
Andrew Carlson & Sons, Inc.
 No. 78-1212.
 United States Court of Appeals, Second Circuit.
 Sept. 28, 1978.
 
 Present: Hon. Leonard P. MOORE, Hon. William H. TIMBERS, and Hon. Ellsworth A. VAN GRAAFEILAND.
 MOORE, Cir. J.
 On this appeal from a judgment, entered on a jury verdict, convicting Carlson of a conspiracy in restraint of trade in violation of Section 1 of the Sherman Act, 15 U.S.C. Sec. 1 (1976), the essential issue is whether the jury reasonably could have found that the jurisdictional requirements of the "in commerce" or "flow" test were met, specifically:
 (1) that there was no "appreciable change" in the character of the interstate components of defendant's products as the result of its manufacturing process;
 (2) that there was a practical continuity of movement of these components, with no appreciable interruption during the manufacturing process; and
 (3) that the defendant was chargeable with having manufactured products on purchasers' special orders based on evidence that a co-conspirator had done so.
 We hold that, under the correct charge given by Judge Neaher, the jury reasonably could have so found.
 Insofar as the evidence showed that one of the appellant's co-conspirators, Carbro, had engaged in steel and cement ordering based on the specific orders of its customers, the judge was justified in allowing the jury to charge these shipments against Carlson & Sons for the purpose of determining whether its dealings were "in commerce". United States v. Wilshire Oil Co. of Texas 427 F.2d 969 (10 Cir.), cert. denied, 400 U.S. 829 (1970). Although the cases do not explicitly require that such special shipments be "substantial", as Judge Neaher charged, the appellant appears correct in suggesting that in all the cases in the past the special ordering has in fact been substantial. Furthermore, Judge Neaher's charge makes sense in terms of the "practical" conception of commerce which underlies the concept employed in the Sherman Act, Swift & Co. v. United States, 196 U.S. 375, 398 (1905).
 Nevertheless, viewing the evidence in the light most favorable to the government, we hold that there was sufficient evidence from which the jury could have concluded that Carbro's special ordering was substantial. Although the factual record on the extent of these orders may have been scant, they did take place eight or ten times a year and usually involved large jobs. The record was not such that no "reasonable mind might fairly conclude ... beyond a reasonable doubt", United States v. Taylor, 464 F.2d 240, 243 (2 Cir.1972) (Friendly, J.), that Carbro's special ordering was not substantial.
 
 
 1
 Although we should be alert to the dangers that would be presented by the too-ready adoption in criminal matters of presumptions regarding interstate effect that can be found in civil cases, see, e.g., Goldfarb v. Virginia State Bar, 421 U.S. 773, 783-96 (1975), we are satisfied that the conspiracy in which Carlson & Sons participated fell within the reach of the Sherman Act. It is well established that Congress meant to reach the furtherest limits of its power under the commerce clause. Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 194 (1974) (dictum); United States v. South-Eastern Underwriters Ass'n, 322 U.S. 533, 558 (1944) (giving legislative history).
 
 
 2
 In view of the foregoing conclusion, the conviction must be affirmed. We wish to make clear, moreover, that the government also established that Carbro's frequent deliveries and rapid inventory turnover probably also was sufficient to support a finding of an uninterrupted flow of interstate commerce that could be attributed to Carlson & Sons, even though Carlson & Sons itself kept materials stockpiled for a time probably long enough to break the stream of commerce. Cf. Walling v. Jacksonville Paper Co., 317 U.S. 564 (1943) (warehousing operation that unloaded and reloaded shipments on same day); Foremost Dairies, Inc. v. FTC, 348 F.2d 674 (5 Cir.1965), cert. denied, 382 U.S. 959 (1965) (negligible processing operation in which milk generally moved in and out of plant on same day).
 
 
 3
 Finally, in fairness we acknowledge that appellant probably is correct in its assertion that the cement powder and steel mesh had undergone too appreciable a change to be held to be "in commerce", apart from the special ordering. Judge Neaher himself so ruled as to the cement powder; the cases cited by the government do not support a contrary conclusion. In United States v. Flom, 558 F.2d 1179 (5 Cir.1977), where the fabrication of metal bars coming from out of state was involved, the Fifth Circuit acknowledged that that case came very close to falling on the nonjurisdiction side of the dividing line. The manufacturing process involved here, however, is a more substantial one, cf. Foremost Dairies, supra. The defendant was not serving as a mere conduit for finished products arriving from out of state. Las Vegas Merchant Plumbers Ass'n v. United States, 210 F.2d 732 (9 Cir.1954). No one wishing to purchase steel from out-of-state suppliers would have done so by having defendant first fabricate it into drainage rings.