**UNITED STATES of America,**
Appellee,

v.

**John MORRIS, Morris Billings, and Gloria Billings, Defendants-Appellants.**

No. 332, Docket 25327.

United States Court of Appeals
Second Circuit.

Argued June 8, 1959.

Decided July 13, 1959.

Barlow Smith, New York City, for defendant-appellant John Morris.

Edward Q. Carr, Jr., New York City (Florence M. Kelley, New York City, on the brief), for defendants-appellants Morris Billings and Gloria Billings.

Charles Norman Shaffer, Jr., Asst. U. S. Atty., Southern District of New York, New York City (S. Hazard Gillespie, Jr., U. S. Atty., for the Southern District of New York, N. Y. and Kevin Thomas Duffy, Asst. U. S. Atty., New York City, on the brief), for appellee, United States of America.

Before HINCKS and LUMBARD, Circuit Judges, and SMITH, District Judge.

J. JOSEPH SMITH, District Judge.

John Morris, Morris Billings and Gloria Billings appeal from judgments of conviction on trial without a jury before Hon. John M. Cashin in the United States District Court for the Southern District of New York. John Morris and Thelma Penson were charged in the first count with an unlawful sale of heroin on July 19, 1957 in violation of 21 U.S.C.A. §§ 173 and 174. John Morris, Morris Billings, Gloria Billings and Thelma Penson were charged in the second count with possessing, concealing and facilitating the transportation and concealment of heroin on July 29, 1957, in violation of 21 U.S.C.A. §§ 173 and 174. John Morris, Morris Billings, Gloria Billings and Thelma Penson were charged in the third count with conspiracy to violate the narcotic laws (21 U.S.C.A. §§ 173 and 174) from on or about June 15, 1957 up to the date of indictment, December 23, 1957. Defendant Penson pleaded guilty, and was sentenced to seven and one-half years imprisonment on counts one and two and five years on count three, to run concurrently. $1.00 fines were imposed on each count and remitted. Defendants John Morris, Morris Billings and Gloria Billings pleaded not guilty and were found guilty on trial to the court. John Morris was sentenced to fifteen years imprisonment on counts one and two and to five years imprisonment on count three, to run concurrently, and to pay a fine of $5,000 on each count. Morris Billings and Gloria Billings were each sentenced to five years imprisonment on counts two and three, to run concurrently, and fined $1.00 on each count, the fine being remitted.

The testimony of government witnesses Fowler, a special employee, and Newkirk, a narcotics agent, if believed, established that John Morris, a former prison mate of Fowler, agreed on July 19, 1957 to make arrangements to secure narcotics for Fowler, appointed a time and place to meet him, the Braddock Bar

in New York City at 7:00 p. m. He kept the appointment, bringing Penson along, set the price at $400 an ounce for pure or $135 an ounce for cut heroin. Fowler ordered two ounces of the cut heroin. Morris sent Fowler to an apartment rented by Morris, which Penson was using, to await Penson. Penson let Fowler and Newkirk into the apartment, took $270 as payment in advance from Newkirk, left the apartment about 9:00 p. m. and returned about 11:45 with the two ounces of heroin for Newkirk. On July 25, Newkirk sought additional heroin from Penson, who later informed him that she had been unable to reach John Morris. The next morning she asked Newkirk to wait until she could see John Morris. She took a taxicab which was observed going to the building where John Morris lived, and in which building Penson remained for some 30 minutes. She returned to Newkirk and told him John Morris was afraid of agents, having been tailed on two occasions, but would arrange for delivery of two ounces the following Sunday. On Sunday, July 28, Penson told Newkirk delivery would be made at 11:30 that night. Penson and Newkirk met, went to the Braddock Bar, where Penson made phone calls. They left the bar, met defendants Morris Billings and Gloria Billings outside, went to the Penson apartment. Newkirk complained about the first purchase being of poor quality, and short in weight. Both Billings talked about the drugs, and told Newkirk they were working under John Morris' direction in obtaining the drugs for Newkirk. At the Penson apartment Morris Billings said he and Newkirk would wait while the girls went and got the drugs. Morris Billings requested, received and pocketed the $270 from Newkirk for the drugs. The women left and returned later whereupon the two men went with the women to the Harriet Hotel, where the two Billings left the others and Penson obtained in a telephone booth a paper bag containing two ounces of heroin which she delivered to Newkirk. On July 31, 1957 Newkirk and Fowler went to John Morris' confectionery store, met

John Morris and complained about the quantity and quality of the two purchases. John Morris said he knew nothing about the second buy being short or bad and blamed Penson, a user, for stealing from the package. Later in the conversation John Morris denied any knowledge of the second transaction and finally denied knowledge of both transactions. He stated that he would try other suppliers to get stronger stuff, although he stated that Penson probably cut the stuff after she got it.

So far as the defendants Billings are concerned, the evidence that Billings had asked, received and pocketed the payment for the narcotics, that his wife had accompanied Penson in her trip to obtain them, that both had assured Newkirk as to the quality of the purchase to be made and stated to Newkirk that they were working for John Morris in obtaining the drugs for Newkirk was sufficient to uphold the finding of guilt of both Billings on the second count, as facilitating the transportation and concealment of the heroin on July 29. Since the sentences were concurrent and the fines remitted, no consideration need be given to the sufficiency of the evidence to convict the Billings on the third count.

So far as the defendant John Morris is concerned, there is evidence through the testimony of Fowler and Newkirk as to John Morris' actions and statements that John Morris arranged and directed the July 19 sale through Penson, although John Morris did not personally take payment from or personally deliver narcotics to the agent. His later visit from Penson and his statements to the agents of his plans to obtain additional narcotics from other suppliers are additional proof that he was a party to a continuing conspiracy with Penson to supply narcotics extending beyond the July 19 sale. His conviction on the first and third counts must therefore stand.

The sufficiency of the evidence against John Morris on the second count, for facilitating transportation and con-

cealment on July 29, however, presents a more serious problem. Post arrest statements of Penson, referred to in cross examination and admitted in evidence to impeach her testimony as a defense witness for John Morris, were not admissible as affirmative evidence against Morris. Wigmore on Evidence, 3rd Ed., Vol. III, Sec. 1018. Southern R. Co. v. Gray, 241 U.S. 333, 36 S.Ct. 558, 60 L.Ed. 1030; United States v. Freundlich, 2 Cir., 1938, 95 F.2d 376; N.L.R.B. v. Quest-Shon Mark Brassiere Co., 2 Cir., 1950, 185 F.2d 285, certiorari denied, 1951, 342 U.S. 812, 72 S.Ct. 25, 96 L.Ed. 614; Bridges v. Wixon, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103. Counsel for John Morris objected to the reception of Penson's statement in evidence as not binding on John Morris, and collateral to the issue. There is, however, no indication that it was used by the Court as affirmative proof against John Morris. It was properly admissible to discredit Penson's testimony exculpatory of John Morris. It will not be presumed that the judge made improper use of the evidence. Weinberg v. Northern Pac. Ry. Co., 8 Cir., 1945, 150 F.2d 645. Aside from such statements, the evidence which ties John Morris to the July 29th transportation and concealment of heroin charged in the second count consists of his actions and statements on the 31st of July when the special employee Fowler and Newkirk complained about the quality and quantity of the drugs received from Penson on the 29th. The testimony of Fowler on the stand, Transcript pp. 214–215, was that Morris said he knew nothing about it being short or bad. On complaint that "the arrangements were different from that, he had promised me good stuff and good weight," the response was that "he would try to get me some better stuff, he would try to make arrangements to get some stronger stuff, better weight * * *" and on p. 218 that it was Thelma's fault, she used stuff and she would steal. Since these were not disavowals of the July 29th transaction, but explanations of why the drugs weren't up to par, they permit the inference that Morris knew of and directed the July 29th transaction. Newkirk also testified, p. 275, that Morris stated that he would try other suppliers to get stronger stuff, and on p. 322 that she (Penson) probably cut the stuff after she got it.

The statement given the agents by Fowler on the day after the July 31 conversation, however, apparently omits any mention of such statements by Morris, and supports the claim of counsel that Morris consistently represented himself to be ignorant of the July 29th transaction. Whether Fowler's earlier statement was necessarily inconsistent or only incomplete and his later testimony a more accurate version was for the trier to determine. We cannot say that it was error to hold Fowler's testimony in this regard credible, particularly since it is bolstered by Newkirk's recollection that such statements were made, having in mind that the witnesses were segregated during the trial. This is so even though Newkirk's general impression was that Morris did deny knowledge of the July 29th transaction. A trier in evaluating the testimony of witnesses, including government witnesses, is free to believe part of what a witness says, and disbelieve the remainder. United States v. Gordon, 3 Cir., 1957, 242 F.2d 122, certiorari denied, 1957, 354 U.S. 921, 77 S.Ct. 1378, 1 L.Ed. 2d 1436. "In passing upon the sufficiency of the proof, it is not our province to weigh the evidence or to determine the credibility of witnesses. We must take that view of the evidence most favorable to the government and sustain the verdict * * * if there be substantial evidence to support it." United States v. Manton, 2 Cir., 1938, 107 F.2d 834, 839; United States v. Gallo, 2 Cir., 1941, 123 F.2d 229; United States v. Goldstein, 2 Cir., 1943, 135 F.2d 359; Corbin v. United States, 10 Cir., 1958, 253 F.2d 646. The rule is the same whether the trier is jury or judge. United States v. Dudley, 2 Cir., 1958, 260 F.2d 439. Here there was evidence of some substance, which, if believed, supports the finding of guilt.

The remaining claims of Morris are without merit. The court was not

required to find abandonment of the scheme by Morris for there is no uncontradicted evidence of unequivocal and effective withdrawal before the crime charged in any of the counts was complete. Nor is any conceivable prejudice shown from the fact that the closing date of the conspiracy charged in the indictment was the date of the indictment, December 23, while the arrests were made August 28. Cooper v. United States, 5 Cir., 1937, 91 F.2d 195, 198; Neely v. United States, 5 Cir., 1944, 145 F.2d 828, 829.

The judgment is affirmed as to each defendant-appellant on each count.

The court wishes to express its appreciation to assigned counsel Barlow Smith and Edward Q. Carr, Jr. of the New York bar for their diligent efforts on this appeal.