UNITED STATES of America, Appellee,

v.

Thomas E. ROBERTSON, American-Canadian Oil & Drilling Corporation, Thomas E. Robertson Company, Inc., Defendants-Appellants.

No. 107, Docket 26994.

United States Court of Appeals Second Circuit.

Argued Jan. 16, 1962.

Decided Feb. 2, 1962.

See also 181 F.Supp. 158.

Julian C. Tepper of Walter & Tepper, Brooklyn, N. Y., for defendants-appellants.

Arnold N. Enker, Asst. U. S. Atty., S. D. New York, New York City (Robert M. Morgenthau, U. S. Atty., S. D. New York and Arthur L. Liman, Asst. U. S. Atty., New York City, on the brief), for appellee.

Before MEDINA, MOORE and SMITH, Circuit Judges.

SMITH, Circuit Judge.

This is an appeal from a judgment of conviction in the United States District Court for the Southern District of New York (Frederick van Pelt Bryan, J.) upon a jury verdict on 14 counts (Count 10 dismissed) of violations of the Securities Act of 1933 by means of a scheme to defraud in the sale of securities using the mails or instruments of communication in interstate commerce, in violation of 15 U.S.C.A. § 77q(a) (1), (2),[1] and on Counts 19 and 20 (Counts 16 through 18 dismissed) charging the use of the mails for the purpose of delivering unregistered securities after sale in violation of 15 U.S.C.A. § 77e(a) (2).[2] Thomas E. Robertson was sentenced to three months confinement on Count 1 and to confinement for one year each on Counts 2 through 9, 11 through 15, 19 and 20, to run concurrently after completion of confinement under Count 1, with execution suspended on counts subsequent to Count 1, and was placed on probation for five

---

1. "§ 77q. *Fraudulent interstate transactions*

"(a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

"(1) to employ any device, scheme, or artifice to defraud, or

"(2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or * * *."

2. "§ 77e. *Prohibitions relating to interstate commerce and the mails*

"(a) Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly—

"(1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or

"(2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale."

years. Thomas E. Robertson Company, Inc. was fined $1,000 on Count 1, and imposition of sentence was suspended on the remaining counts. Imposition of sentence was suspended on American-Canadian Oil & Drilling Corp. on all counts. Judgment is affirmed on counts 1 through 9, 11 through 15, reversed on counts 19 and 20.

 Robertson, who had some experience in oil and gas wildcatting, assembled leases on Arkansas acreage in his own name and in that of the defendant Robertson Company, formed by him for that purpose. He proposed to form a development corporation whose stock would be used to purchase his own leases and to purchase acreage in California from one Langford who claimed to have a substantial holding there. The Langford deal fell through, but during the negotiations Robertson met one Mrs. Davenport and her business manager, one Kay Van. August 24, 1953 the new corporation, a Delaware corporation, was formed, with 1,000,000 common shares authorized. 500,000 shares of the new corporation, defendant American-Canadian, were issued to Robertson or Robertson Company in exchange for Arkansas acreage. Mrs. Davenport purchased part of Robertson's stock in American-Canadian, and at her suggestion the authorized stock was increased to 5,000,000 shares. Leases on 8,000 non-producing acres in Hudspeth County, Texas, acquired by Robertson prior to June 1953 for some $2300, were assigned to American-Canadian for 400,000 shares of American-Canadian stock. Other properties were assigned for 100,000 shares. Commencing in July 1954 with sale of stock by Robertson to one Powell, a beer salesman, and thereafter through Powell to his customers and acquaintances, the public sale of the stock of American-Canadian commenced, on which the indictment is based. The sole question on the first 14 counts on appeal is the sufficiency of the evidence of the scheme to defraud by use of the mails and interstate transportation in sale of this stock, the representations by Robertson and the falsity of the representations. Appellants concede, as they must, that we must take that view of the evidence most favorable to the government and sustain the verdict if there is in the record substantial evidence to support it, sufficient to convince a jury beyond a reasonable doubt. Holland v. United States, 348 U. S. 121, 140, 75 S.Ct. 127, 99 L.Ed. 150 (1954); United States v. Tutino, 269 F. 2d 488 (2 Cir. 1959); United States v. Morris, 269 F.2d 100 (2 Cir. 1959). Questions of credibility and choice of conflicting inferences are for the jury. United States v. Grunewald, 233 F.2d 556 (2 Cir. 1956). All of the essential elements of the crime are amply supported by proof. The following evidence was among that introduced as to specific misrepresentations:

1. DiMicco, one of the purchasers of stock through Powell, testified that sometime in August 1954 Robertson and Powell visited him at which time he was told that there was $5,000,000 of assets in back of Canadian Oil (268a) and that the corporation had wells which were then in production. These were false statements. In February 1955 a contract was entered into to acquire producing properties prior to which time the corporation owned no producing wells. The authorized capitalization of the corporation was $5,000,000 but at no time were the assets equal to that amount.

2. Mrs. DeRose and Lucille O'Brien testified that in September 1954 Robertson represented that the corporation had producing wells (302a, 329a) and made other statements which the jury could have concluded were reckless misstatements as to future possibilities (listing, dividends, profits, market values).

3. In December 1954 a letter was sent out which Robertson denied having seen prior to its distribution which contained 10 misstatements. Whether or not Robertson was aware of the contents of the letter prior to its release he admitted seeing the letter shortly thereafter and recognizing that it contained untrue statements. No attempt was made by him to disclose the true state of affairs to those

who had been misinformed (927a–941a). A letter containing some of the same misstatements was sent out by Robertson in March 1955 (Govt.Ex. 61, Govt.App. 5a–6a).

4. A brochure and prospectus were prepared and distributed to stockholders in December 1954 which falsely stated that: (1) expenses of the sale of the securities would not exceed 10% of the offering price to the public (Govt.Ex. 122, para. 1); (2) asserted that no transactions other than those specified had been, or would be consummated between Robertson and Canadian Oil, without disclosing that he had received 500,000 shares of Canadian Oil in exchange for his interest in other oil properties (App. 555a–556a) and options to purchase 1,-000,000 shares of Canadian Oil at $1.00 as consideration for his interest in American-Canadian Drilling Co. of Texas, a defunct dummy corporation (Govt.Ex. 122, para. 6, 889a–891a); (3) that approximately $225,000 had been expended by Robertson in drilling for oil on the Arkansas property which he had transferred to the corporation in exchange for 500,000 shares when in fact substantially less was spent (Govt.Ex. 122, para. 2); (4) no mention was made that Robertson, a promoter of the company and the principal actor therein was "bailing out" of the corporation. Robertson admitted that he read the brochure and the prospectus in their entirety before they were distributed (963a–964a). The evidence is clearly sufficient to support the verdict.

■ There is no attack made on the charge on the first 14 counts in issue, claim of error as to the charge being confined to the failure to include the element of wilfulness as essential to conviction under § 77e on Counts 19 and 20. While the government does not appear seriously to contest the claim of insufficiency of the charge on Counts 19 and 20 on wilfulness to meet the test laid down in United States v. Crosby, 294 F.2d 928 (2 Cir. 1961), it contends that it is unnecessary to pass upon this ground of appeal, since the sentence on each of these counts is concurrent with sentences on other counts

on which the conviction is upheld. See Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958); Hirabayashi v. United States, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943); United States v. Rosario, 147 F.Supp. 434, 439 (S.D.N.Y.1956), aff'd per curiam, 245 F.2d 955 (2 Cir. 1957). It is perhaps not essential, but we prefer not to approve by indirection the apparent insufficiency in the charge in view of the later decision in United States v. Crosby, supra. We therefore reverse the judgment as to Counts 19 and 20.

Judgment affirmed on Counts 1 through 9, and 11 through 15. Reversed on Counts 19 and 20.