**Raymond E. McMILLEN, Jr., Defendant, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Douglas GRUCHY, Defendant, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 6823, 6824.**

United States Court of Appeals First Circuit.

Nov. 28, 1967.

Charles M. Burnim, Boston, Mass., with whom F. Lee Bailey, Boston, Mass., was on the brief, for appellant Raymond E. McMillen, Jr.

William P. Homans, Jr., Boston, Mass., by appointment of the Court, for appellant Douglas Gruchy.

William J. Koen, Asst. U. S. Atty., with whom Paul F. Markham, U. S. Atty., and Edward J. Lee, Asst. U. S. Atty., were on the brief, for appellee.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

These are two appeals from judgments of conviction for bank robbery following jury verdicts. Both appellants were found guilty as principals of robbing a federally insured bank at Brockton, Massachusetts in violation of 18 U.S.C. § 2113(a), and of conspiring to rob such

bank in violation of 18 U.S.C. § 371. In addition, appellant McMillen was found guilty, as a principal, of bank robbery by use of a dangerous weapon. 18 U.S.C. § 2113(d). Named as co-conspirators and defendants in the indictment against appellant McMillen, and co-conspirators only in the indictment against appellant Gruchy, were three other men—Matthews, Orr, and John Kelley—and named in both indictments as a co-conspirator but not a defendant was one Silva. Some of these men and others involved in the crime testified at the trial. It is the presence and absence of certain instructions relating to their credibility that give rise to the major issue on these appeals.

Of the testimony given by thirty-two witnesses during the five day trial, that of thirteen was directed to the robbery itself, conducted by Orr and Matthews, and the identification of automobiles used in the getaway. A substantial portion of the testimony was given by the four alleged co-conspirators named in the indictments and largely concerned the roles of appellants in planning the robbery, splitting up the proceeds, and endeavoring to induce prospective witnesses not to talk.

The two major accomplice witnesses were Silva and Matthews. Silva, named as a co-conspirator in both indictments, was a school boy who worked part-time for appellant Gruchy. Although his statement to the FBI and testimony before the grand jury in no way implicated his employer, Silva gave a different account of the relevant events the day before his appearance in the trial court and his testimony on the witness stand was most damaging to Gruchy. No charge had issued against him. While he knew that he could be prosecuted, he denied that any threats or promises had been made to him.

Matthews had pleaded guilty to robbery and conspiracy and was serving his sentence at the time appellants were brought to trial. A charge of armed robbery was still pending against him on the morning of his testimony. Until shortly before he testified, his account to the police had always been that guns had been left in the car and had not been taken into the bank. He had told the prosecution a week before trial that he would invoke the Fifth Amendment because of the still pending charge. Then, an hour before taking the witness stand, he admitted for the first time that he took a gun into the bank with him, repeated this in testimony, and acknowledged that he knew that the prosecution had already submitted to the court a motion to dismiss the armed robbery charge. In fact, the court had granted the motion before Matthews began his testimony.

The other two accomplice witnesses, less important to the prosecution's case than Silva and Matthews, were Walsh and William Kelley. A week before trial Walsh had told the government for the first time of the incriminating incidents to which he later testified. While denying that the FBI had threatened to indict him if he did not testify, he admitted that he still feared prosecution. William Kelley testified that the first time he had talked to a police officer about the case was the night before his testimony when he was "riding around in a car" after having had several beers.

The remaining relevant prosecution testimony was that (1) of a gun dealer who had sold the revolver used in the crime a week before to a customer who, appellant McMillen later testified, was accompanied by him; (2) of a young lady who contradicted appellant McMillen's testimony about the time of their meeting on the evening following the robbery; and (3) of a Newton police officer, Arnold. The latter testimony was the most direct corroboration, the officer testifying that he received a telephone call from McMillen two days after the robbery asking him to meet McMillen at a nearby cocktail lounge; and that in the ensuing conversation at the cocktail lounge McMillen asked how much information the FBI had, "how would it go for me if the missing money turned up?",

indicating that he could get the money if it were not Sunday.

As far as appellant Gruchy's involvement is concerned, there was no corroborating testimony. The only testimony that could be said to approach corroboration was that of the manager of the robbed bank who said that on one occasion when Gruchy, a depositor, visited the bank he was accompanied by McMillen.

The case for the defense consisted of alibi testimony by each appellant, accounting for his whereabouts on the day of the robbery, and the testimony of several witnesses which corroborated such accounts, contradicted the testimony of Arnold, or described threats, promises, and improper motive on the part of the FBI and the police.

## THE INSTRUCTIONS

The court in a long and thoughtful charge began with a careful discussion of the presumption of innocence, and then dealt with the fact-finding prerogative of the jury and the prosecution's burden of proof beyond a reasonable doubt. It then charged in pertinent part as follows on the issue of credibility of witnesses:

"Each witness who takes the oath from Mr. Lyons to tell the truth is presumed in the first instance to speak the truth, but that presumption may be outweighed by the manner in which the witness testified, by the character of the testimony given, by the type of story the witness tells, or by other contradictory evidence which you believe to be true.

\* \* \* \* \* \*

"You may also consider any relation each witness may bear to either side of the case. You may consider whether the witness has an interest in the outcome of the case. \* \* \*

"If as to any witness you are satisfied that that presumption of truthfulness has been outweighed on the basis of what I have just reviewed with you as to the factors you may consider on credibility, you are free to give the testimony of that witness such credibility, if any, as you think it may deserve. You are free to accept that testimony, reject it in part or reject it completely."

The remainder of the instructions treated the particular charges against appellants, the elements required to be proved, and the complicated rules governing proof of conspiracy. The record shows no requests for particular instructions nor any objection.

The major contention of both appellants is that the quoted passage of the instructions, concerning a "presumption of truthfulness" of witnesses, combined with a failure to include an instruction that the testimony of accomplices should be scrutinized with caution, constitutes "plain error" under Fed.R.Crim.P. 52(b). We agree, with one important limitation.

## LEGAL STANDARDS
## APPLICABLE

Analysis is complicated for the reason that the net impact of two interacting alleged errors in instructions must be assessed in the context of two cases with enough in common to be tried together but with enough differences to be considered separately on review. We shall discuss, first, each alleged error in the light of relevant authorities, and, second, the requirements of the standard of review applicable under Fed.R.Crim.P. 52 (b) in the absence of requests for instructions under Fed.R.Crim.P. 30. Finally, we shall apply these standards to the case of each appellant.

The instructions given in this case as to a "presumption of truthfulness" is, with two exceptions, substantially identical to that set forth in Judge Mathes' "Manual of Jury Instruction and Forms for Federal Criminal Cases", 27 F.R.D. 39, 67. In recent years this instruction has come under repeated attack for its absence of support in either authority or logic and has been watered down in its most recent version to read, "Ordinarily, it is *assumed* that a witness will speak the truth. But this assumption may be dispelled \* \* \*." Mathes & Devitt,

Federal Jury Practice and Instructions § 72.01 (1965) (emphasis added).

In Knapp v. United States, 316 F.2d 794 (1963), the Fifth Circuit ruled that to give the presumption instruction was not error, although not wise. A vigorous concurring opinion by Judge Brown proclaimed it more than unwise, particularly when coupled with a definition of the word "presumption". While he looked upon it as error he did not believe it plain error, and since objection was not made, he felt it was not reachable. In 1965 the Second Circuit dealt with the problem in United States v. Persico, 349 F.2d 6, when it reversed a conviction following a long and confused charge where the trial judge instructed, over objection, that a "witness is presumed to tell the truth" without saying how the presumption can be outweighed. The Third Circuit in 1966 observed that there was an almost complete absence of authority for talk about a legal presumption of truthfulness in a criminal case, that such talk derogated from the jury's right to pass on credibility and clashed with the instructions addressed to the presumption of innocence and the burden of proof. United States v. Meisch, 370 F.2d 768. This case was followed soon by United States v. Johnson, 371 F.2d 800 (3d Cir. 1967), where, on objection, a conviction was reversed specifically because the "presumption" instruction was given.

These authorities, while helpful, do not control the situation before us. In the two cases last cited, the defendants, unlike appellants here, had not taken the stand or offered witnesses. The instruction therefore tended to have the effect of telling the jury to take the testimony of the prosecution witnesses at face value. But there is nothing to suggest that the rationale of the cited cases is confined to such a narrow factual situation. Even where, as here, the defense offers witnesses, the impact on each side of the presumption of truthfulness is not necessarily equal.

All that we have said indicates that a trial judge in a criminal case ought not to refer to a "presumption of truthfulness". It does not indicate that, in the absence of objection, this instruction is "plain error". Nor have the cases we have cited so held. As is always so, the particular circumstances of each case must be carefully surveyed before such an unusual step is taken. In these appeals the giving of this instruction must be weighed together with the complementary failure to give an instruction that the testimony of an accomplice should be carefully scrutinized.

Such an instruction, less subject to criticism than that we have been discussing, almost immediately follows the other in Mathes' manual, 27 F.R.D. at 68. It is unfortunate that neither court nor counsel thought of the appropriateness of such an instruction where the testimony of Silva, Walsh, Matthews, and William Kelley—all confessedly engaged to some extent 'in either the preparation or the commission of the crime—was both important and extensive, accounting for 40 per cent of all testimony. Moreover, counsel for McMillen devoted most of his closing argument to attacking the credibility of these witnesses and the "magic potion" used by the prosecution, while counsel for the prosecution briefly discounted any other motive for the testimony but that of telling the truth.

Perhaps the court felt that it had adequately covered the accomplice issue by inserting into the standard charge the following sentence: "You may consider whether the witness has an interest in the outcome of the case." This followed a similar sentence—as to relationship of a witness to either side—prescribed by the standard form. It is this part of the charge to which counsel for the government refers in his brief in the Gruchy appeal, saying:

"The position of the Government is that the charge on the question of credibility is not offered as a substitute for an accomplice charge but that the charge as given on the subject of credibility embraced and contained within it a form of cautionary instruc-

tion in dealing with accomplice testimony."

We do not think that the charge can be so construed. That its mention of "relation" and "interest" can embrace the specific possibilities of fear or favor with which accomplice testimony is fraught is no substitute for an instruction pinpointed at these possibilities.

We are dealing with an instruction which recalls the conviction of Walter Raleigh based on the statements of his alleged co-conspirator Cobham in 1603. See Phelps v. United States, 252 F.2d 49 (5th Cir. 1958).[1] With roots so deep, it is remarkable that what has grown through the centuries can still be called only a "counsel of caution". 7 Wigmore, Evidence § 2056 (3d ed. 1940). It is equally remarkable that growth, however interstitial, can still be discerned in contemporary American law.

In 1909 the Supreme Court observed that accomplice testimony "ought to be received with suspicion, and with the very greatest care and caution, and ought not to be passed upon by the jury under the same rules governing other and apparently credible witnesses." Crawford v. United States, 212 U.S. 183, 204, 29 S.Ct. 260, 268, 53 L.Ed. 465. In 1910, while refusing to reverse a judgment for failure to give an accomplice instruction, the Court admonished that it was "the better practice for courts to caution juries against too much reliance upon the testimony of accomplices * * *." Holmgren v. United States, 217 U.S. 509, 524, 30 S.Ct. 588, 592, 54 L.Ed. 861. See also Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917). In 1952 it cited as a modern trend the admission of accomplice testimony, but subject to "broad latitude" in cross-examination and "careful instructions". On Lee v. United States, 343 U.S. 747, 757, 72 S.Ct. 967, 96 L.Ed. 1270. And in Cash v. Culver, 358 U.S. 633, 79 S.Ct. 432, 3 L.Ed.2d 557 (1959), the Court in dealing with the failure of an accused

not represented by counsel to request an accomplice instruction required by Florida decisions, recognized impliedly the substantiality of this instruction.

The real movement in this narrow field of practice has come from our sister circuits. We begin with Diggs v. United States, 220 F. 545, 552 (1915), aff'd sub nom. Caminetti v. United States, supra, where the Ninth Circuit observed that it had discovered no case holding that it was reversible error to refuse a request for an accomplice instruction. This authority has been followed not only in that circuit, Pina v. United States, 165 F.2d 890 (9th Cir. 1948); Harris v. United States, 261 F.2d 897 (9th Cir. 1958); Audett v. United States, 265 F.2d 837 (9th Cir.), cert. denied, 361 U.S. 815, 80 S.Ct. 54, 4 L.Ed. 2d 62 (1959), but until recently has also commanded the unqualified respect of the Fifth Circuit, Lyles v. United States, 249 F.2d 744 (5th Cir. 1957), cert. denied, 356 U.S. 931, 78 S.Ct. 773, 2 L.Ed. 2d 761 (1958); Siglar v. United States, 208 F.2d 865 (5th Cir.), cert. denied, 347 U.S. 991, 74 S.Ct. 854, 98 L.Ed. 1125 (1954); Pine v. United States, 135 F.2d 353 (5th Cir.), cert. denied, 320 U.S. 740, 64 S.Ct. 40, 88 L.Ed. 439 (1943). Any court subscribing to this proposition would hold that, in the absence of a request for an accomplice instruction, failure to give such is not plain error. Even courts which might reverse for a refusal to give the instruction under some circumstances, see Stoneking v. United States, 232 F.2d 385, 392 (8th Cir.), cert. denied, 352 U.S. 835, 77 S.Ct. 54, 1 L.Ed.2d 54 (1956), peremptorily refuse to note plain error when no request is made. Barnes v. United States, 347 F.2d 925 (8th Cir. 1965).

Other circuits, refusing to subscribe to the unlimited latitude of *Diggs*, have in recent years drawn a distinction, when requests for accomplice instructions are refused, between cases where accomplice (or paid informer) testimony has been

---

1. For a recent account of this trial, see Bowen, The Lion and The Throne, ch. 15 & 16 (Little Brown 1956).

corroborated by other evidence and where it has stood as the sole or dominant source of incrimination or where the status of accomplice has been obscured from the jury. In the former situation, error has not been found. United States v. Cianchetti, 315 F.2d 584 (2d Cir. 1963); Joseph v. United States, 286 F.2d 468 (5th Cir. 1960); Pittsburgh Plate Glass Co. v. United States, 260 F.2d 397 (4th Cir. 1958), aff'd, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); Stoneking v. United States, supra. In the latter situation, judgments have been reversed. Hall v. United States, 324 F.2d 817 (5th Cir. 1963); Dunn v. United States, 318 F.2d 89 (5th Cir. 1963); United States v. Masino, 275 F.2d 129 (2d Cir. 1960); Fletcher v. United States, 81 U.S.App. D.C. 306, 158 F.2d 321 (1946); Freed v. United States, 49 App.D.C. 392, 266 F. 1012 (1920). If accomplice testimony was corroborated and no request for any instruction was made, failure to give an instruction would not be plain error. Walker v. United States, 285 F.2d 52 (5th Cir. 1960); Cratty v. United States, 82 U.S.App.D.C. 236, 163 F.2d 844 (1947).

This dichotomy of cases based on the presence or absence of corroboration of accomplice testimony is already well removed from the carte blanche attitude of Diggs v. United States, supra. What remains is to inquire into the situation where (1) the testimony of an accomplice is the only evidence of guilt, (2) no accomplice instruction is given, and (3) no request or objection is made by counsel. In United States v. George, 319 F.2d 77 (6th Cir.), cert. denied, 375 U.S. 942, 84 S.Ct. 349, 11 L.Ed.2d 273 (1963), the incriminating testimony was given by two key accomplice witnesses. No request for instructions was made. But both the prosecuting attorney and the defense attorney had urged caution in assessing their testimony and the judge in his charge had referred to the high-handed methods pursued by the government in preparing its case. The court found no manifest injustice under the circumstances.

This brings us to Williamson v. United States, 332 F.2d 123 (5th Cir. 1964), where the Fifth Circuit faced a case involving a defendant implicated solely through the testimony of an accomplice but where no request for an accomplice instruction was made. In reversing, the court noted its disbelief in many particulars of the incriminating testimony and said that the case was to be distinguished from "less spectacular circumstances" where the trial court has discretion.

Our present task is to apply the legal precedents relevant both to the giving of a "presumption of truthfulness" instruction covering all witnesses and to the failure to give a cautionary instruction applicable only to accomplice testimony when no requests for or objections to the trial court's instructions were made. In this task we are subject to the rigorous standards which must be met before we can notice "plain error". We are not here concerned with technical error or with prejudicial error, or even with our view of what we may deem to be the obvious guilt or innocence of the individual appellants. In the words of Fed.R.Crim.P. 52(b) we are concerned only with any errors "affecting substantial rights". As the Supreme Court stated in United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936), we may—and we must—notice errors which "seriously affect the fairness * * * of judicial proceedings." The circumstances must be "exceptional" and the error must be such as to prejudice "in a substantial manner appellant's right to a fair trial." Polansky v. United States, 332 F.2d 233, 235 (1st Cir. 1964). We therefore approach the issue with full recognition of the time, effort, and expense which have been expended in this trial, the care demonstrated by the court, the restraint of counsel for the government, and the efforts of appellants' chosen counsel.

We take first the appeal of appellant Gruchy. We hold that as to him the

giving of the "presumption of truthfulness" instruction combined with the failure to give a cautionary instruction as to the testimony of accomplice witnesses affected his substantial rights. The only evidence connecting him with the bank robbery came from the mouths of others involved in that escapade. Only one non-accomplice, the bank manager, even came close to establishing a linkage when he testified that Gruchy and McMillen once jointly visited the bank. This, we think, is insufficient corroboration. We concede that some of Gruchy's own testimony was suspect.[2] The fact remains that the entire affirmative case against him was made by Silva, Matthews, and Walsh.

These were not accomplices who had paid their price to society and were free from carrot or stick. Matthews knew that the prosecution had just recommended that his armed robbery charge be dropped. Silva knew that prosecution was possible. And Walsh acknowledged that the FBI had talked with him about the consequences of not telling the truth on the stand and that he still feared prosecution. While counsel endeavored in argument to persuade the jury to disbelieve this testimony, the court said nothing about the appropriateness of giving it special scrutiny. Not only did the accomplice testimony escape any such special caution but it was affirmatively linked with all other testimony as enjoying a "presumption of truthfulness" which had to be "outweighed" before it was discounted. Recognizing the rare occasions when it is proper to notice

"plain error", we think that the particular circumstances here—the double-acting error relating to the uncorroborated testimony of accomplices on which rests the conviction of appellant Gruchy —justify reversal.

■ We view McMillen's case differently. While the same double defect in instructions undoubtedly affected him adversely, we cannot say that there exists a reasonable possibility of miscarriage of justice. For there is present here what was lacking in Gruchy's case— corroborating evidence. That this is highly significant was recognized in McMillen's brief where counsel stated: "The appellant submits that the record establishes that he could not have been convicted without the testimony of the co-conspirators. The credibility of such testimony was therefore critical to the conviction." We disagree. Even if the jury disbelieved all of the accomplice witnesses, there was an adequate basis for finding him guilty.

Officer Arnold's testimony about the cocktail lounge conversation with McMillen, if believed, constituted an admission and was sufficient to support the jury's verdict. Additionally, the testimony of the gun shop owner, that he sold a revolver identified as one used in the robbery, gained significance when McMillen said that he had accompanied Orr to the gun shop a week before the robbery to lend his name and advice in purchasing small weapons for protection. Moreover, McMillen's precise recollection of his activities on the day of the robbery[3] was,

---

2. For example, Silva had testified that, on the occasion of an earlier planned robbery which fell through, Gruchy had commented, "Where are those guys? That is what I get for having kids do a job for me." Gruchy's explanation was that despite the fact that his business was steadily losing money, he had hired McMillen to paint his premises and that nothing had been done, with winter approaching. Hence his remark. He further testified that he spent the afternoon of the robbery—the time when, according to Matthews, the conspirators met and divided the proceeds—going over figures relating to a proposed con-

version of his employees to a piece work basis. The figures were supplied him by his foreman, a young man whom he had hired as a welder and who, at time of trial, was a cook.

3. Not only did McMillen recall the exact time of each move made during the day, the number of a cab he had taken, the labels on baskets he observed, but he also testified that during the afternoon (when, according to Matthews, the robbery proceeds were being divided up by the conspirators) he had spent three hours in the Museum of Fine Arts.

as to a substantial segment of time, i. e., the evening, flatly contradicted by a rebuttal witness. We, therefore, cannot notice "plain error" in this case.

### MULTIPLE CONVICTIONS

Appellant McMillen further asserts that it was error for the court to have instructed the jury that it could find him guilty of both robbery and robbery with a dangerous weapon, in violation of 18 U.S.C. § 2113(a) and (d), and that the subsequent convictions and twenty-year concurrent sentences on these two counts were invalid and conclusive of a mistrial. He argues that the convictions are inconsistent, since the robbery was committed either with or without the use of a gun.

■ Conviction for robbery, however, does not require proof of the absence of a weapon. It merely does not require proof of the use of a weapon. One could be indicted and convicted for simple robbery even though the use of a weapon were proved. Such proof would merely be surplusage. This is not a situation of inherent inconsistency such as that which existed in Milanovich v. United States, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773 (1961), cited by appellant McMillen, where a defendant was sentenced for both larceny of government property and receiving the same property. One cannot at once take and receive the same thing. What is involved here, however, is a lesser offense all elements of which are included in a greater offense.

■■ While Prince v. United States, 352 U.S. 322, 328, 77 S.Ct. 403, 1 L.Ed. 2d 370 (1957), has described the final result of convictions under separate subsections of the Bank Robbery Act as a merger of the lesser into the greater of-fense, the fact that concurrent sentences are imposed not exceeding the maximum sentence for violation of the armed robbery subsection does not constitute the pyramiding of penalties which Prince stated not to be within the intent of Congress. 352 U.S. at 327, 77 S.Ct. 403. As we recognized in Campbell v. United States, 269 F.2d 688, 692 (1st Cir. 1959), vacated on other grounds, 365 U.S. 85, 81 S.Ct. 421, 5 L.Ed.2d 428 (1961), a multiple sentence under the Bank Robbery Act is "technically incorrect". But, noting that the Court in Prince was dealing with consecutive sentences, we concluded that the imposition of concurrent sentences not exceeding the maximum for the armed robbery count did not harm defendants. We are of the same mind today.[4] See United States v. Gainey, 380 U.S. 63, 65, 85 S.Ct. 754, 13 L.Ed.2d 658 (1965); Hirabayashi v. United States, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943); Sinclair v. United States, 279 U.S. 263, 299, 49 S.Ct. 268, 73 L.Ed. 692 (1929); Abrams v. United States, 250 U.S. 616, 619, 40 S.Ct. 17, 63 L.Ed. 1173 (1919). Moreover, at the district court level there is the danger that if the court imposes a jail sentence on only one count, appellate action may, unavoidably, result in an overall miscarriage of justice. Cf. Pugliese v. United States, 353 F.2d 514 (1st Cir. 1965).

At the present stage of the proceedings a tidying up of the record may be in order. We therefore direct that as to appellant McMillen the sentence on Count 1, the lesser substantive offense, be vacated, but that otherwise as to him the judgments of the District Court be affirmed. As to Gruchy, the judgment and sentence as to both counts is vacated and the case remanded for a new trial consistent herewith.

4. While courts have quoted with approval the assertion in Hibdon v. United States, 204 F.2d 834, 839, 37 A.L.R.2d 1130 (6th Cir. 1953), that " * * * a multiplicity of sentences impairs a prisoner's opportunities for pardon or parole", we agree with the contrary observation in Clark v. United States, 267 F.2d 99, 102 (4th Cir. 1959), that " * * * eligibility for parole is not affected, since that is determined by the length of the term of imprisonment and not by the number of sentences imposed. 18 U.S.C.A. § 4202; United States Probation Officer's Manual, Chapter VII."