**UNITED STATES of America**

v.

**Eugene BOONE, Harold L. Howard, Vincent J. Loffa, Artis Jackson, Artis Jackson, Appellant.**

**No. 16453.**

United States Court of Appeals Third Circuit.

Argued June 21, 1968.

Decided Sept. 24, 1968

Rehearing Denied Oct. 16, 1968.

Daniel E. Isles, Querques, Isles & Weissbard, Orange, N. J., for appellant.

Kenneth P. Zauber, Chief, Civil Div., Asst. U. S. Atty., Newark, N. J. (Richard D. Catenacci, Asst. U. S. Atty., David M. Satz, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before BIGGS, KALODNER and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

Artis Jackson appeals from a judgment of conviction for bank robbery following a jury verdict on each count of a three-count indictment.[1] Appellant, Boone, Howard and Loffa were arrested for the March 9, 1966, robbery of the federally-insured Union County Trust Company in Elizabeth, New Jersey. Jackson pleaded not guilty, whereas each of the other defendants pleaded guilty. His first trial resulted in disagreement of the jury; the second, here under consideration, resulted in a guilty verdict. Defendant Howard and defendant Loffa, who voluntarily confessed to his part in the crime, testified against the appellant. Defendant Boone, who also had confessed and thereby implicated Jackson, recanted that part of his confession implicating Jackson and appeared on the appellant's behalf, testifying that the appellant was not one of the robbers and alleging that one "Ricky," not Jackson, was the fourth man. The appellant did not take the stand but, in addition to Boone, called his sisters, Marcella Jackson and Eleanor Graham, both of whom testified that appellant was with them for the period during which the robbery was committed.[2]

The principal issue relied on by appellant is whether the trial judge erred in instructing the jury that a witness is presumed to tell the truth.[3] Subsequent to the second trial in this case, we have disapproved instructions almost identical

1. Appellant had been indicted for violation of 18 U.S.C. § 2113(a), (b) and (d).

2. The defendant called eight other witnesses to testify on his behalf, including a police officer, Arlington Hobson, and a shoeshine boy, Benny Moss, both of whom lent credence to his alibi.

3. The charge to the jury embodied an instruction which included substantially the language suggested by Judge Mathes regarding the presumption of truth in "Jury Instructions and Forms for Federal Criminal Cases," 27 F.R.D. 39, 67–68 (1961).

to the one involved here,[4] but the presentation by the defendant of testimony and the trial judge's full instructions to the jury on the manner in which they were to determine the credibility of witnesses make any error in the use of the word "presumption" harmless on this record.[5]

Ordinarily, an instruction on the presumption of truth is replete with danger in a criminal case because of the possible conflict between the presumption of truth and the superior presumption of innocence. In United States v. Meisch, 370 F.2d 768 (3rd Cir. 1966), and in United States v. Johnson, 371 F.2d 800 (3rd Cir. 1967), the only evidence was that presented by the Government. In both of those cases we held that an instruction on the presumption of truth [6] constituted reversible error because the presumption operated exclusively in favor of the Government. Where the prosecution alone introduces testimony and the charge states that sworn witnesses are presumed to testify truthfully, the defendant is exposed to the danger that the jury may feel compelled to accept the uncontradicted testimony of prosecution witnesses at face value. This one-sided effect of the presumption language was not present here because Boone, both of Jackson's sisters, and eight other witnesses testified on his behalf. The testimony of these defense witnesses was, of course, equally subject to the presumption of truth contained in the charge. Also, the danger that the jury might feel obligated to accept uncontradicted testimony of Government witnesses at face value to overcome the presumption of innocence

is absent here because the testimony of those witnesses was directly contradicted by the defendant's sworn witnesses. Since there was obvious contradiction in the testimony of the opposing parties' witnesses, the jury's ultimate conclusion could only be based upon their evaluation of the relative credibility of prosecution and defense witnesses. Therefore, the instruction on the presumption of truth could not have derogated from the jury's sole right to determine the credibility of witnesses in this instance.

■ When only prosecution witnesses have testified, the presumption of truth may be tantamount to an assumption of guilt in the jury's mind, and thus conflict with the presumption of a defendant's innocence. Where, as here, both parties have produced witnesses, neither is favored by the presumption of truth, particularly in light of the careful qualifications contained in the District Judge's charge, as hereinafter discussed.

While reversing appellant's conviction in United States v. Evans, 398 F.2d 159 (3rd Cir., No. 16751, 6/27/68), partially on the ground that the instructions to the jury included the affirmation that a witness is assumed to tell the truth,[7] we recognized that "If the defendant himself takes the stand and calls other witnesses on his behalf * * * it may in some cases appear that such a charge is of [equal or] greater benefit to the defense * * *." In *Evans*, the defendants took the stand and called witnesses on their behalf. We reversed because the assertion of an assumption of truth was not sufficiently

4. United States v. Meisch, 370 F.2d 768 (3rd Cir. 1966); United States v. Johnson, 371 F.2d 800 (3rd Cir. 1967); United States v. Evans, 398 F.2d 159 (3rd Cir. No. 16751, 6/27/68).

5. Chapman v. State of California, 386 U.S. 18, 22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); United States v. Dichiarinte, 385 F.2d 333, 339 (7th Cir. 1967), where the court recognized that a statement that witnesses are "presumed to speak the truth" was undesirable, but "may not have been prejudicial in this case." United States v. Bilotti, 380 F.2d 649 (2nd Cir. 1967) (a charge of the

presumption of truthfulness with a full explanation of how it can be overcome is not reversible error).

6. Both the *Johnson* and *Meisch* instructions were based on the language found in 27 F.R.D. 39, 67–68 (1961), as was the instruction in this case.

7. In *Evans*, the trial court modified the language from "presume" to "assume," in accordance with a suggested revision contained in Mathes and Devitt, "Federal Jury Practice and Instructions," § 9.01, pp. 111–112 (1965).

qualified to enable the jury to understand the criteria necessary to make an accurate determination of credibility; not because of any danger from uncontradicted prosecution testimony.[8] In the present case, however, the trial court took great care to explain that the jury is the sole judge of credibility; that they should scrutinize the testimony and the circumstances under which each witness testified; that they should consider the intelligence, motive, state of mind, and demeanor of the witnesses; that the jury should consider the interest of each witness in the outcome of the case; they should treat the testimony of accomplices with care and caution; and they should consider the relationship of each witness to the parties.[9] These instructions have sufficiently explained the jury's function and duly qualified the presumption to enable them to determine satisfactorily the credibility of each witness.[10]

We reaffirm the rule laid down in *Meisch, Johnson,* and *Evans,* but we find that it should not be applied retroactively [11] to the present factual situation.

Even though there was an objection by counsel for defendant after the charge to "any statement of any presumption \* \* \* that witnesses tell the truth", the *Meisch* rule would have to be retroactively applied to affect this trial, and the following language in McMillen v. United States, 386 F.2d 29, 33 (1st Cir. 1967), is applicable in our view to the situation presented by this record:

> "All that we have said indicates that a trial judge in a criminal case ought not to refer to a 'presumption of truthfulness.' It does not indicate that, in the absence of objection, this instruction is 'plain error.' Nor have the cases we have cited so held. As is always so, the particular circumstances of each case must be carefully surveyed before such an unusual step is taken."

▮ The trial court did not err in charging the jury that the defendant had conceded that a federally-insured bank had been subject to an armed robbery wherein the lives of bank employees were placed in jeopardy with dangerous weapons.

---

**8.** See United States v. Evans, supra, page 162.

**9.** It is noted that the language from the charge concerning presumptions, quoted at p. 10 of the appellant's supplemental brief, concerned the presumption of innocence and appears at least four pages before the discussion concerning tests of credibility, which covered three and one-half pages of transcript and included this sentence: "A witness is presumed to speak the truth, but this presumption may be outweighed by the manner in which the witness testifies, by the character of the testimony given or by contradictory evidence \* \* \*."

**10.** We are not confronted with the problem in McMillen v. United States, 386 F.2d 29 (1st Cir. 1967), regarding the compounded dangers present when the instruction on the presumption of truth is given, the Government's witnesses are accomplices, and the court does not caution the jury regarding accomplice testimony. The trial court in this case carefully instructed the jury that the testimony of an accomplice should be "received with caution and weighed with

great care," thus making the holding in *McMillen,* relied on by the defendant, inapplicable. A further diminution of the dangers from accomplice testimony resulted from the testimony of the eye witnesses in this case, who corroborated the accomplice testimony, thereby justifying the jury in lending it further credence.

**11.** The language of Judge Mathes (see footnote 3) had been used often in this and other Circuits prior to *Meisch* and its use in this situation was not a "serious" flaw in the fact finding process. Cf. Stovall v. Denno, 388 U.S. 293, 298, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), where the court recognized its duty to weigh probabilities using this language: "The extent to which a condemned practice infects the integrity of the truth-determining process at trial is a 'question of probabilities.' [Johnson v. State of New Jersey, 384 U.S. 719 at 729, 86 S.Ct. 1772, 16 L.Ed.2d 882]. Such probabilities must in turn be weighed against the prior justified reliance upon the old standard and the impact of retroactivity upon the administration of justice."

The prosecution introduced Union County Trust Company's Certificate of Insurance with the Federal Deposit Insurance Corporation without objection, and testimony was produced showing that the robbers were armed. Thereafter, counsel for the defendant in his summation stated: "There was a robbery of the Union County Trust Company on March 9, 1966; nobody denies that." Following the charge, defense counsel stated to the court: " * * * [Y]our Honor, in indicating that the robbery of the bank was conceded, your Honor stated that sometime on March 9, between dawn and noon, the bank was robbed. Now the statement is a true statement." Defense counsel did not except to that portion of the charge describing the defendant's concessions. Defense counsel also stated in his summation that the only issue for the jury's determination was "who done it."

■ Appellant complains that he was prejudiced because Boone's statement implicating the appellant was brought to the jury's attention during cross-examination and was read during the Government's rebuttal in direct examination of an F. B. I. Special Agent. The defendant himself called Boone and offered his testimony, which was contrary to his previous statement. The trial court limited the jury's consideration of Boone's confession to the effect it had on their determination of the credibility of his sworn testimony and instructed them that the confession of an accomplice has no bearing on the determination of a defendant's guilt or innocence.[12] Having opened the door, the defendant cannot justifiably claim he has been prejudiced when his witness is impeached by a prior inconsistent statement either on cross-examination or in rebuttal.[13] To hold otherwise would effectively deny the ability to impeach the credibility of one who has recanted some prior confession by virtue of his testimony on the stand, even where the portion recanted has a direct bearing on the witness' credibility.

We have carefully considered the appellant's other contentions and find them to be without merit.

The judgment of conviction will be affirmed.

BIGGS, Circuit Judge (dissenting).

This decision changes the salutory rule laid down by this Court in United States v. Meisch, 370 F.2d 768, 773–774 (1966), in United States v. Johnson, 371 F.2d 800, 804–805 (1967), and in United States v. Evans, 3 Cir., 398 F.2d 159 (1968). The majority decides that the evidence given by the witnesses for Jackson was of such a kind and character, with a presumption of truthfulness, as to equalize or outweigh the evidence given by the witnesses in favor of the United States, also with a presumption of truthfulness. To my mind no jury and no judge could make a valid judgment as to the veracity of witnesses under such conditions. The majority opinion commits the paradox of weighing one imponderable against another. The old rule should be adhered to. For these reasons, I must respectfully dissent.

12. We note here that the defendant has not been denied his Sixth Amendment Right to Confrontation, as was held in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Both here and in Bruton the confession of an accomplice was introduced and instructions were given the jury to disregard the confession in determining the defendant's guilt or innocence. The crucial difference is that the co-defendant did not take the stand in Bruton, but here Boone took the stand and was directly examined by the defense as their own witness, as well as undergoing cross-examination by the Government.

13. United States v. Morris, 269 F.2d 100 (2nd Cir.), cert. den. 361 U.S. 885, 80 S.Ct. 159, 4 L.Ed.2d 122 (1959) [post-arrest statements of an accomplice admitted to impeach testimony exculpating the defendant]. See 3 Wigmore, Evidence, § 1040.