**UNITED STATES of America,**
**Appellee,**

v.

**Jeffrey BUJESE, Appellant.**
**No. 307, Docket 30574.**

United States Court of Appeals,
Second Circuit.

Oct. 29, 1970.

Milton Adler, New York City (The Legal Aid Society, and Phylis Skloot Bamberger, New York City, of counsel), in opposition for appellant.

Robert M. Morgenthau, U. S. Atty. S. D. N. Y., New York City (Frederick F. Greenman, Jr. and Charles P. Sifton, Asst. U. S. Attys., of counsel), in support of the petition for rehearing by appellee.

Petition for Rehearing

Before MOORE and HAYS, Circuit Judge, and ZAVATT,* District Judge.

MOORE, Circuit Judge:

Jeffrey Bujese and Bryant T. Hutchins were convicted on March 11, 1964 of robbing and conspiring to rob, a national bank. This Court affirmed Bujese's conviction (Hutchins was not involved in the appeal) in a brief *per curiam* opinion. 378 F.2d 719 (1967). On June 18, 1968 the Supreme Court vacated the judgment of this Court and remanded the case "for further consideration in the light of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. *See* Roberts v. Russell, *ante,* [392 U.S.] p. 293 [88 S.Ct. 1921, 20 L.Ed.2d 1100]." 392 U.S. 297, 88 S.Ct. 2064, 20 L.Ed.2d 1113. This Court on July 8, 1968 vacated its previous judgment and on February 3, 1969, 405 F.2d 888, *per curiam* "Upon reconsideration we reverse[d] the judgment of conviction and grant[ed] a new trial." This action was taken without briefs or arguments by either party. On March 10, 1969 the Government filed its petition for a rehearing. The Legal Aid Society filed its brief in opposition on March 19, 1969 and the Government replied thereto on March 30, 1969.

Reconsideration in the light of *Bruton* requires an analysis of that phase of the trial as might give rise to the applicability of the *Bruton* principle. We are satisfied that our original reversal, following the Supreme Court's reversal, did not properly apply *Bruton* to the facts of this case and, hence, we now reverse our order of February 3, 1969 which reversed Bujese's conviction.

On October 22, 1963 Bujese and Hutchins robbed the First National Bank of Spring Valley (N.Y.) of $25,358. The testimony was more than adequate to support conviction. Hutchins had given a confession to an F.B.I. agent which admitted both the plan to rob and the robbery, and which fully implicated Bujese. As part of the Government's case, the prosecutor offered and read Hutchins' confession but preceded the offer with the qualification that it was offered only against Hutchins and was "not binding nor can it be used against the defendant Bujese." Were this all, there might well be a *Bruton* question because at this point Bujese would have been deprived of an opportunity to confront Hutchins. But this was not all and, in our opinion, the subsequent events which gave Bujese the opportunity to confront Hutchins— an opportunity fully utilized—clearly remove this case from the *Bruton* category.

For the defense, Bujese's sisters tried (unsuccessfully) to establish an alibi for him. Bujese himself then took the stand and testified to a story as to his whereabouts on October 22d involving an effort by Hutchins and himself to seek work on a construction project, explaining his purchase of a new car with $3,200 received as a loan from Hutchins, and telling of discussions with Hutchins as to a bank robbery and his refusal to par-

* Of the Eastern District of New York, sitting by designation.

48

ticipate therein. Hutchins then on his own behalf took the stand and stated that, although he and Bujese had discussed a bank robbery, Bujese refused to participate in such an enterprise.

On cross-examination when confronted with his confession, Hutchins not only denied making it but also denied that he had ever given a statement to anyone that he and Bujese had robbed the bank. However, after being shown additional documents, Hutchins from the stand confessed to the robbery but refused to answer any further questions.

At this stage of the trial, there were important developments. The trial court had ruled that because Hutchins had pleaded guilty before the jury, if he testified further he would have to do so as Bujese's witness and that "if Bujese desires to call him as part of his defense, I will allow him * * *.", and added "he [Hutchins] has indicated a desire to testify for your defendant." Since no hostility towards Bujese had been shown (in fact, quite the contrary), the Court ruled that until such a point were reached, he could not be examined as a hostile witness.

A conference of some half-hour duration was held in chambers among Bujese, his counsel and Hutchins. Hutchins then took the stand as Bujese's witness and testified, in substance, that Bujese had had no part in the robbery and that Hutchins had been assisted by two others whom he mentioned by name. He even attributed his story to the F.B.I. of Bujese's participation to a desire for revenge because he had thought that Bujese had informed on him, and he flatly stated that he had not told the truth as to Bujese in his confession. A less hostile witness can scarcely be imagined.

The thrust of Bujese's argument is that "This record shows that appellant [Bujese] was given no opportunity to confront and cross-examine his confessing co-defendant Bryant Hutchins either in fact, or in effect." The premise is without foundation. The record reveals not only a full opportunity but the exer-

cise thereof. Bujese had the benefit of eliciting facts far more beneficial to him by having Hutchins as his own witness doing his best to exonerate Bujese than could have been developed on any cross-examination.

The generalities as to cross-examination set forth in Alford v. United States, 282 U.S. 687, 691–692, 51 S.Ct. 218, 75 L.Ed. 624 (1931), relied upon by Bujese, have no application here. Of course, cross-examination should not be unduly curtailed. No legal magic attaches to the words "confrontation" and "cross-examination." The only question is: did the defendant, whom the confession implicates, have an opportunity to confront the confessor? This is a simple principle of fundamental justice probably erroneously obscured by that misconception that jury instructions could erase from the mind of the jury that which they have heard. Thus, *Bruton* quite properly overruled Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed. 2d 278. In *Bruton*, however, there was no one to confront or cross-examine. The use of the term "cross-examination" in *Bruton* and in Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923, was premised on the fact that the Court in *Bruton* and in *Pointer* was speaking of "the right of the accused in a criminal case to confront the witnesses against him" (*Pointer* at 404, 85 S.Ct. at 1068). And so it should be—the witnesses *against* him. Here Bujese was in the fortunate position of being able to confront a witness not *against* him but very much *for* him. As the Third Circuit pointed out in United States v. Boone, 401 F.2d 659, fn. 12, p. 663 (1968), "The crucial difference is that the co-defendant did not take the stand in *Bruton*, but here Boone took the stand and was directly examined by the defense as their own witness, as well as undergoing cross-examination by the Government."

Having reconsidered the facts of this case in the light of *Bruton*, we have concluded that its principles are inapplicable to the facts here, that the Govern-

ment's petition for a rehearing should be granted and on the rehearing our judgment of February 3, 1969 should be reversed and the original judgment, entered April 14, 1964 should be affirmed.